**Jose Antonio VARONA PACHECO, Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGATION, United States Department of Justice, Attorney General of the United States and Clarence M. Kelley, Director of the F.B.I., Defendants.**

Civ. No. 77–28.

United States District Court, D. Puerto Rico.

Sept. 12, 1978.

---

11. In any case, as indicated above, it is presently unclear whether the *Cox* decision is still the law of this circuit.

Olaguibet A. López Pacheco, Hato Rey, P. R., for plaintiff.

Julio Morales Sanchez, U. S. Atty., Old San Juan, P. R., for defendants.

## OPINION AND ORDER

TOLEDO, Chief Judge.

The original complaint in this case was filed on January 5, 1977. The action was brought pursuant to the provisions of the Freedom of Information and Privacy Act, Title 5, United States Code, Section 552(a)(4)(B), ("the Act"), seeking the production of records kept by the Federal Bureau of Investigation pertaining to plaintiff and his activities. Shortly after the filing, we stayed the action pending plaintiff's exhaustion of the available administrative remedies.

Thereafter, on January 24, 1978, after exhausting the administrative remedies, plaintiff filed an amended complaint alleging in essence that all of the documents and/or information withheld from plaintiff and as to which defendants claimed exemption under the Act, were withheld arbitrarily and capriciously and without lawful reason. This amended complaint was answered on March 1, 1978.

At the present time, there are several motions pending resolution by this Court. On June 1, 1978, plaintiff filed a motion and supporting memorandum requesting the holding of an *in camera* inspection of plaintiff's record including the documents in dispute. This was opposed to by defendants on July 10, 1978. On July 5, 1978, defendants filed a motion to dismiss and brief support thereto, which was opposed by plaintiff on July 19, 1978. On July 10, 1978, defendants filed a motion for summary judgment with a brief, which was opposed to by plaintiff's filing of August 3, 1978. Because the motion to dismiss, if granted, would render the remaining ones academic, we shall consider it first.

### I. *DEFENDANTS' MOTION TO DISMISS*

Defendants have moved to dismiss the instant action pursuant to Rule 12 of the Federal Rules of Civil Procedure as against the Federal Bureau of Investigation ("FBI"), the Attorney General of the United States, and Clarence M. Kelley, Director

of the FBI, on the grounds that they are not proper party defendants under the Act, Title 5, United States Code, Section 552 (1970 and Supp. IV, 1974).

The named defendants in this case, both in the original and the amended complaint, are: (1) Federal Bureau of Investigation; (2) the United States Department of Justice; (3) the Attorney General of the United States, and (4) Mr. Clarence M. Kelley, Director of the FBI, who has been now substituted as per our Order of July 21, 1978, by Mr. William H. Webster, the present Director of the FBI.

In support of their contention defendants allege that the Act here in question grants jurisdiction to the Federal district courts "to enjoin an agency from withholding agency records", Title 5, United States Code, Section 552(a)(4)(B), and that the statutory definition of "agency" [1] does not encompass either individuals or component parts of an agency.

Thus, it is alleged that the Attorney General of the United States, and the FBI Director have been improperly included herein because they are Government officials, and clearly not "agencies" within the meaning of the Act. In regard to the FBI it is contended that the same is a component part of the Department of Justice and thus is not a proper party defendant under the Freedom of Information Act.

Two unpublished opinions are cited for the proposition that the Act here in question does not authorize a complaint against the moving defendants. Barely legible copies of the same were attached to defendants' brief. The first one is *Burke v. Kelley*, Civil Action No. 75–336–C3 (February 11, 1976, D.C.Kansas). In that case the Court dismissed the complaint against the Director of the FBI after finding that it lacked jurisdiction because the Department of Justice had not been included as a defendant.

In *Shouse v. Burris*, Civil Action No. CV475–198 (December 23, 1975, D.C.Ga.S. D.), the Court ruled in almost identical terms as in *Burke*, supra.

Plaintiff cites the case of *Hamlin v. Kelley*, 433 F.Supp. 180 (1977), in his opposition to defendants' contention. We have carefully analyzed this case and find it to be a better precedent than those advanced by defendants. *Hamlin* presents a factual situation most akin to that present herein. In that case the United States Attorney General, the FBI, and the FBI Director sought to have the complaint dismissed as against them on grounds identical to the ones herein advanced: that they were not "agencies" within the meaning of the Act. The Court rejected this contention and denied the motion to dismiss on said grounds [2] by stating:

"Section 551 of the APA [5 U.S.C. § 551] defines "agency" to mean ". . . each authority of the Government of the United States, whether or not it is within or subject to review by another agency . . ." The Attorney General and the Director of the FBI, sued in their official capacity as custodians of the requested documents, are named defendants in this case precisely because they are the individuals most responsible for the policy and decisions of the Department of Justice and the FBI and because they are the final authorities of the administration of FOIA [Freedom of Information Act] within those departments.

Further, so many cases under this statute have been sustained against heads of departments, units and agencies that their susceptibility to suit is well established; and the motion to dismiss Levi and Kelley can only be considered frivolous.

Similarly, the FBI has long been recognized as a proper party to actions filed

---

1. Found in Title 5, United States Code, Section 551(1):

"(1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, . . ."

2. The Court did grant Edward Levi's motion to dismiss but only on the grounds that he was no longer Attorney General of the United States. However, the complaint was dismissed as to him "insofar as it (sought) injunctive relief." See *Id.* at p. 181, note 1.

under FOIA. The District of Columbia Circuit found that the definition of "agency" cited above included "any administrative unit with substantial independent authority in the exercise of specific functions." *Soucie v. David*, 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971). Defendant FBI meets this test and is a proper party to this action." *Id.* at pp. 181–182.

It is interesting to note that *Hamlin* was issued *after* the 1974 amendments, the legislative history of which is cited by defendants in support of their motion to dismiss. However, we do not think that the unpublished jurisprudence cited by defendants and the *Hamlin* case are irreconcilable, or that *Hamlin* rules against the legislative history cited by defendants in their brief. We think that the meaning of the legislative history cited and *all* the cases mentioned above is that the agency be included as a defendant so that its highest official be allowed to make a determination as to how to implement the Freedom of Information Act. It seems to us that defendants FBI, the Attorney General of the United States and Mr. Kelley, are proper parties in this action. Therefore, the motion to dismiss is DENIED for the grounds expounded by the United States District Court for the Northern District of Illinois.

## II. *DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR AN "IN CAMERA" INSPECTION OF DOCUMENTS*

In their motion for summary judgment defendants contend that the present action should be dismissed because there is no genuine issue as to any material fact and that, as a matter of law, they are entitled to judgment in their favor.

In the amended complaint filed herein it is alleged that the documents and/or information which defendants withheld from plaintiff and as to which defendants claimed exemption under the Act, were withheld arbitrarily and without lawful reason. It is also claimed therein that defendants have refused to amend the records to eliminate therefrom "false, untrue and incorrect information on plaintiff Varona Pacheco."

In support of their motion for summary judgment defendants have filed detailed affidavits by Special Agents of the FBI in which the records requested by plaintiff were indexed, they described the contents of each excised or withheld document, and cited the specific exemption under which the FBI has denied the disclosure. It is further stated that the only issue existing herein is one of law, that is, whether under the FOIA plaintiff is entitled to the disclosure of the withheld information. They further allege that summary judgment can be granted at this stage by examining the administrative proceedings afforded plaintiff herein and the affidavits of FBI Special Agents Murphy and Dean and that there is no need for further proceedings for an *in camera* inspection of documents.

On June, 1, 1978, plaintiff filed a motion requesting that the Court undertake an *in camera* inspection to determine which, if any, portions of the records withheld by defendants were exempt from disclosure under Title 5, U.S.C., Sections 552 and 552a. Thus, in his opposition to the motion for summary judgment plaintiff urged that the *in camera* inspection should be undertaken, and summary judgment in favor of defendants should not be granted because their affidavits show bad faith in that they try to justify non-disclosure of documents in the FBI files by making generalized claims of exemptions, while at the same time opposing plaintiff's motion for an *in camera* inspection of the entire file.

In *Weissman v. CIA*, 184 U.S.App. D.C. 117, 565 F.2d 692 (1977), it was decided that the holding of an *in camera* inspection of documents was left to the discretion of the court. It was therein suggested that before the court order such an inspection, the Government should be given an opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure. See *Id.* 184 U.S.App.D.C. at 122, 565 F.2d at 697. The

court went as far as to offer a guideline 184 U.S.App.D.C. at page 123, 565 F.2d at page 698 when it stated, (quoting from the legislative history of the Act):

"It is only where the record is vague or the agency claims too sweeping or suggestive of bad faith that a District Court should conduct an *in camera* examination to look for segregable non-exempt matter."

The affidavits filed by defendants herein can not be catalogued as "general", "sweeping" nor are they suggestive of bad faith.

In *Weissman v. CIA*, supra, the United States Court of Appeals for the District of Columbia Circuit affirmed a summary judgment which had been granted by the trial court on the basis of affidavits similar to the ones filed by defendants herein. In regard to the issue of good faith the court stated in that case:

"The CIA dealt with the instant request in a conscientious manner. It disclosed much material, it released additional material as the result of an administrative appeal, and it came forward with newly discovered documents as located. Agency documents have been released to plaintiff-appellant on four separate occasions. *The Agency submitted affidavits summarizing each document, or portion of a document withheld, and indicated the rationale for each claimed exemption. It filed an indexed description of all material withheld, and supported the withholding by explicit affidavits.* No discovery was attempted; plaintiff simply contested the adequacy of the affidavits. *There is no reason, on this record, to presume bad faith on the part of the CIA.* In this instance, the CIA released some documents in their entirety and portions of 22 others. *From the deletions in the partially released documents, and the Agency explanations for these deletions, the District Court could well determine that the Agency was not improperly withholding information.* Such

an examination of a full record can take the place of a partial, or sampling, *in camera* inspection." *Id.* 184 U.S.App.D.C. at 123, 565 F.2d at 698. (Emphasis added).

■ It seems to us that in the present case defendants have followed the "*Weissman* method". As plaintiff pursued his petition through administrative channels, progressive disclosures were made. This is revealed not only from defendants' affidavits but from plaintiff's statements as well. The affidavits of Special Agents Murphy and Dean specifically described the documents or portions withheld and gave objective grounds for claiming each specific exemption from disclosure under the Act. We find no reason to presume bad faith, and we think that an examination of the record before us, and an analysis of the description of the withheld information (most of them consisting of deletions from otherwise released documents) and defendants' explanation for the deletions, enables us to determine whether defendants have complied with the Freedom of Information Act and thus determine whether summary judgment should be entered in their favor.[3]

The Court of Appeals for the First Circuit has already pronounced itself in agreement with the approach we now assume. In *Bell v. United States*, 563 F.2d 484 (1977), the First Circuit affirmed a summary judgment granted in favor of the Government after finding that the Agency's affidavit had adequately demonstrated by its reasonable description that the information withheld logically fell into the category of the claimed exemption:

"While it is clear that the FOIA now authorizes *in camera* review of documents claimed to be exempt on national security grounds, in effect overruling *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed. 119 (1973), it is also clear that such inspection is not mandated. *Weissman v. Central Intelligence Agency* [184 U.S. App.D.C. 117], 565 F.2d at 696 (1977).

---

3. See: *Kanter v. IRS*, infra, where the court found that a detailed index could take the place of *in camera* inspection in certain cases.

The legislative history indicates that, before *in camera* inspection is ordered, an agency should be given the opportunity to demonstrate by affidavit or testimony that the documents are clearly exempt from disclosure, and that the court is expected to accord "substantial weight" to the agency's affidavit. * * * We agree with the District of Columbia Circuit that the test should be whether the affidavit demonstrates by its sufficient description [that] the contested document logically falls into the category of the exemption indicated. In deciding whether to conduct an *in camera* inspection 'it need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith.' " *Id.* at 487.

In the instant case the classified material claimed to be exempt under the Act concerns mainly deletions from the released documents and not the documents as a whole. In their affidavits defendants have stated, and we have no reason not to believe it, that the Agency went to the extent of reclassifying material and disclosing it to plaintiff.

Defendants have filed an Exhibit "Q" in support of their motions for summary judgment and in opposition to an *in camera* inspection. Said Exhibit Q is an index of the documents released, the withheld information and the statutory exemption invoked as grounds for the deletion. We shall refer to it in our analysis of the exemptions herein claimed.[4]

1. *Exemptions claimed under 5 U.S.C. 552(b)(7)(C)*

■ Documents number 1, 2 of Main File (a); 2, 3, 8, 9, 10, from Main File (b); 1, 2, 3, 4, 6, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18 from Main File (c)[5], suffered deletions of information which was withheld under Section 552(b)(7)(C) of the Act.

The exemption claimed above consists of withheld information containing the names of third parties and information on their activities otherwise unrelated to plaintiff or his conduct, and the names of FBI Agents and other Government employees who somehow participated in the investigation of plaintiff's activities.

Defendants justify this claimed exemption by stating that they withheld this type of information in the few instances where the conduct of others was recorded incidentally to that of plaintiff and that the release of such information about third parties would reveal to the world that those persons were investigated by the FBI or that they were in some way connected with an FBI investigation, thereby constituting an unwarranted invasion of personal privacy. It is further added that the deletions are necessary in order to assure the future cooperation of such third persons willing to honestly relate pertinent facts bearing upon a particular investigation.

Our analysis of the documents mentioned above which have suffered deletions under exemption (b)(7)(C) leads us to conclude that the portions thus extricated reasonably coincide with the type of information described by Agent Murphy in his sworn statement. The affidavit and index specify the types of information withheld and note that express or implied assurances of confidence were given to the local law enforcement agencies and the commercial and financial sources in question. It is also noted that the deleted portions contain the names of FBI Agents.

We are satisfied, for the reasons stated in the Murphy affidavit and our analysis of the released document in conjunction with the sense which the deleted portions would make, if known, that release of the withheld information is exempt under (b)(7)(C).

In regard to the claimed exemption (b)(7)(C), it has been held that individuals

---

4. This index contains the following headings: (a) document number; (b) description of document; (c) pages; (i) actual; (ii) released; (d) deletions made; (e) exemptions; (f) cross-references.

5. See the affidavit of Special Agent Murphy, Appendix A, at pp. 6–7, for an explanation of "Main Files" (a), (b) and (c).

providing information to Federal agencies in furtherance of a law enforcement activity must be free to do so without fear of possible reprisals or disclosure of their identities to persons in whom they have not confided. *Forrester v. U. S. Dept. of Labor*, 433 F.Supp. 987 (D.C.N.Y., 1977); *Kanter v. I. R. S.*, 433 F.Supp. 812 (D.C.Ill., 1977). That is not to say that any such reprisals or other actions are threatened or even likely in this case, but a general public policy requires that individuals may furnish investigative information to the Government with complete candor and without the understandable tendency to hedge or withhold information out of fear that their names will later be made public. *Forrester*, supra. It seems to us that these same reasons apply to the deletions under (b)(7)(C) of the names of FBI Agents and other Government employees. See *Murphy Affidavit*, supra, at pp. 8–9.

### 2. *Exemptions under 5 U.S.C. 552(b)(7) (D)*

■ Documents number 2 from Main File (a); number 9 and 10 from Main File (b); and number 1, 3, 4, 6, 9, 10, 11, 12, 13, 17 and 18 from Main File (c), were released with deletions made to withhold information under exemption (b)(7)(D) of Section 552 of the Act, supra.

Under exemption (b)(7)(D) the Government may withhold information which, if released, would disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source.

As stated in p. 9 of the Murphy Affidavit, in many instances, exemption (b)(7)(D) was asserted in conjunction with (b)(7)(C) (privacy) to protect the identities of the persons interviewed. This is explained for the following reasons:

"The privacy of a person interviewed has been traditionally protected by the FBI on the basis that the information was received confidentially. Under the FOIA, these considerations are stated in two separate exemptions; however, they are not mutually exclusive. When Agents of the FBI conduct interviews, they seek information concerning individuals or matters within the investigative jurisdiction of the FBI. Persons interviewed often assume, quite logically, that the information they furnished is for the assistance of the FBI only in the fulfillment of its responsibilities, and, that the identities and the act of their cooperation with the FBI will not be publicly exposed. People in general should be secure in the knowledge, that, absent the necessity to testify in public at a judicial proceeding with its attendant judicial restraints and protections, the assistance they render the Government will be held in confidence and that their confidence will not be violated. This is even more true in a national security type investigation. The fear of such exposure often inhibits the cooperation of otherwise conscientious citizens. This consideration is also recognized under the statute which exempts material from confidential sources and reinforces their right to privacy. Significantly, protection by exemption from disclosure is afforded by the statute to all the information furnished by the source, as well as the actual identity of the source. This recognized the reality that the identity of a source may be determined from an analysis of the information furnished by the source. This is particularly true when the analysis would be made by a knowledgeable person familiar with the facts and circumstances which the analysis involves. As a matter of discretion, wherever the information would not identify the source, it has been left in the document. To disclose the identity of a person interviewed under such circumstances would be more than an unwarranted invasion of his personal privacy; it would breach the confidentiality under which he was interviewed." *Murphy's Affidavit*, pp. 9–10.

As in the analysis of the deletions under the first exemption, again we embarked in the task of reviewing the released documents, this time focusing our attention to the portions extricated under exemption (b)(7)(D).

After an item by item analysis we are convinced that the portions deleted under exemption (b)(7)(D), reasonably coincide with the description given by Agent Murphy in his sworn statement and further itemized in the index submitted as Exhibit Q.

The reason for exemption (b)(7)(D) is very similar to that discussed above for (b)(7)(C). However, this exemption (b)(7)(D) covers not only the privacy of the source, but also the confidentiality of the information offered. And it has been held that the confidentiality of the "source" and/or the information offered can be assured either explicitly or implicitly and in either case they would be deemed encompassed within the exemption. See: *Electronic Memories & Magnetics Corp. v. U. S.*, 431 F.Supp. 356 (D.C.Cal., 1977); *Mobil Oil Corp. v. F. T. C.*, 430 F.Supp. 849 (D.C.N.Y., 1977).

Plaintiff is especially interested in an information withheld from page 3 of Document 17. In this document a source reports that a PSP member solicited money from plaintiff and that, reportedly, Varona answered he had no money for the "Movement", "but would be very happy to furnish funds and finance any violence or armed attempt that would aid in gaining independence for Puerto Rico." Plaintiff requested that defendants furnish the name of the person who solicited the money. Under the invoked exemption (b)(7)(D), this information was correctly withheld inasmuch as such a release would reveal the identities of confidential sources. See: *Electronic Memories & Magnetics Corp.*, supra.

The Government has also invoked exemption (b)(7)(D) to protect local law enforcement agencies. In the Murphy affidavit, it is stated:

"The FBI is firmly convinced that any adverse effect on the existing system of exchange of information between cooperating law enforcement agencies, both local and worldwide, would lead to disastrous far-reaching consequences on innumerable other law enforcement proceedings, both actual and contemplated. The FBI has been made aware that unless the confidentiality under which information exchanges currently exist is continued, the willingness of participating agencies to exchange essential information will be reconsidered. The same principles underlying the exchange of information on an international basis have also been the foundation for such exchanges between Federal and State law enforcement. That is, it has been based on a traditional understanding of confidentiality which is reinforced in a daily basis through contacts which Special Agents of the FBI have with local law enforcement. The free flow of information between cooperating law enforcement agencies plays an integral part in the solution of criminal investigations on a daily basis. Without the assurance of confidentiality, upon which the exchange is based, the FBI's ability to carry its investigative responsibilities would be seriously impaired."

Again, our analysis of the documents together with the exemptions listed in Exhibit Q, lead us to the conclusion that the withheld information correctly falls within the type contemplated by exemption (b)(7)(D).

We think that the same principles underlying the protection of the confidentiality of individual sources are applicable to local agencies and such information is thus correctly withheld under Section 552(b)(7)(D) of the Act.

3. *Exemptions under 5 U.S.C. 552(b)(5)*

■ Documents number 6, 13, 17 from Main File (c) were released after defendants withheld portions of the same claiming said information to be exempt from disclosure pursuant to Section 552(b)(5).

This exemption consists of inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency.

In regard to this claimed exemption Special Agent Murphy states as follows in his affidavit (p. 7):

"The assertion of this exemption was to withhold information appearing in a form document provided to another Government agency to assist that agency in its law enforcement responsibilities. These inter-agency memoranda reflect the subjective opinion of the FBI as to who is considered potentially dangerous and reveal the categories of persons of primary interest to the other Government agency. These documents are used to assist Government agencies in formulating agency policy as to what action will be taken in regard to these individuals."

Our review of the released documents containing (b)(5) deletion tallies with the description of the withheld information contained in Exhibit Q.

It has been held that the purpose of the (b)(5) exemption is to protect and encourage the full and frank discussion of views within and among the different agencies in the formulation of policies and decisions. *Tax Analysts and Advocates v. I. R. S.,* 362 F.Supp. 1298 (1973, D.D.C.), modified on other grounds, 164 U.S.App.D.C. 243, 505 F.2d 350. See also *Cooper v. U. S. Navy Dept.,* 558 F.2d 274 (CA La., 1977); *Fonda v. CIA,* 434 F.Supp. 498 (D.D.C., 1977).

We thus must conclude that the information withheld under exemption (b)(5) was correctly identified by defendants as within the claimed exemption category and should not be released.

### 4. *Exemptions under 5 U.S.C. 552(b)(1)*

 Certain pages and portions were withheld from plaintiff's "Main File (c)" itemized in the often referred to Exhibit Q. Page 1 from document number 1 was entirely withheld under (b)(1) on the grounds that it contained classified information. Also, documents number 3, 8 (withheld entirely) and 13 contained allegedly "classified" information justifying non-disclosure under exemption (b)(1).

Exemption (b)(1) provides for the withholding of matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;"

The Government has attached the affidavit of Special Agent Dean as "Appendix B" to their various motions. In this statement Mr. Dean states his authorization to classify FBI documents pursuant to Executive Order (EO) 11652, Section 2(A)(3) and 2(C) and 28 C.F.R. 17.23, et seq. He further alleges to have made a personal and independent examination of all the documents requested by plaintiff and to have personal knowledge of the information set forth in those documents for which the (b)(1) exemption is claimed.

After defining the terms "TOP SECRET" and "Confidential" contained in EO 11652, he states that the itemized documents mentioned above are exempt from automatic declassification under the EO just mentioned. He states:

"(a) The following items are identified in the inventory as 105–164500:

(1) Document 1 is a report dated March 23, 1967, consisting of 4 pages. It was classified on December 28, 1976 by classifying officer number 4417 in category 2 which is described above with an indefinite date of declassification. The classified data is confined to page 1, paragraphs 1, 2 and 3. This document was presented to DRC for classification review on February 8, 1977, and the classification was upheld as to that portion described:

(2) Document 3 is an Airtel dated May 16, 1967, consisting of 6 pages. It was classified on December 28, 1976 by classifying officer number 4417 in category 3 which is described above with an indefinite date of declassification. The classified data is confined to enclosure, page 1,

paragraph 1 and enclosure, page 2, paragraph 4. This document was presented to the DRC for classification review on February 8, 1977, and the classification was upheld as to that portion described.

(3) Document 8 is a letter dated June 27, 1967, consisting of 1 page. It was classified on December 28, 1976 by classifying officer number 4417 in categories 2 and 3 which are described above with an indefinite date of declassification. The classified data is confined to page 1, paragraphs 1 and 2. This document was presented to the DRC for classification review on February 8, 1977, and the classification was upheld as to that portion described.

(4) Document 13 is a report dated July 1, 1968, consisting of 24 pages. It was classified on December 28, 1976 by classifying officer number 4417 in category 3 which is described above with an indefinite date of declassification. The classified data is confined to page 2, paragraph 1. This document was presented to the DRC for classification review on February 8, 1977, and the classification was upheld as to that portion described.

(5) The affiant has reviewed on a paragraph-by-paragraph basis, all the documents described above and has determined that these documents warrant the classification assigned and that all documents have been appropriately marked in accordance with EO 11652, Section 4(A), and 28 C.F.R. 17.40, et seq."

We find this affidavit to be quite specific and containing no suggestion of bad faith. *Weissman,* supra. Upon arriving to such a determination, judicial activity should cease. This Act is not intended to subject the soundness of executive security classifications to judicial review. *EPA v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). See also: *Florence v. U. S. Dept. of Defense,* 415 F.Supp. 156 (D.D.C., 1976).

In view of the fact that there is no genuine issue as to any material fact and our conviction that under Rule 56 of the Federal Rules of Civil Procedure judgment for defendants should be entered in regard to

the exemptions used as to the documents in Exhibit Q, it is hereby

ORDERED, DECREED and ADJUDGED, that partial summary judgment should be entered for defendants dismissing said portions of the amended complaint claiming that the statutory exemptions from release under the Freedom of Information Act were illegally used. There being no just reason for delay, the Clerk shall enter partial judgment accordingly.

IT IS SO ORDERED.

## III. *PLAINTIFF'S REQUEST THAT RECORDS BE AMENDED*

■ In addition to challenging the exemptions claimed by defendants, plaintiff has requested the amendment of the agency's files so as to delete information claimed by him to be "false and untrue".

Plaintiff is not entitled to the requested amendment of records. This is so because to the extent the information maintained in the FBI Central Record System is subject to exemption under Title 5, United States Code, Section 552a(j) and (k), it is exempt under the correction and amendment provisions of the Privacy Act of 1974.

Section 552a(j)(2) provides, in part, as follows:

"(j) General exemptions.—The head of any agency may promulgate rules . . . to exempt any system of records within the agency from any part of this section . . . if the system of record is—

(1) . . .

(2) maintained by the agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws . . . and which consists of . . .

(B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual . . ."

Under the above Section, the Chief of the FBI Agency specifically exempted from the amendment provisions of the FOIA found in Title 5, United States Code, Section

552a(d) the Central Record System of the FBI (See: 23 CFR 16.96).

Thus, we must conclude that inasmuch as the information which plaintiff herein seeks to amend are all part of the FBI's Central Record System and, therefore, exempt from amendment under the Act, there is no genuine issue as to any material fact with regard to the Agency's refusal to amend. Summary Judgment should be entered on defendants' favor as a matter of law, dismissing said portions of the complaint which sought the amendment of the FBI's Central Record System. The Clerk shall enter partial judgment accordingly, there being no just reason for delay.

IT IS SO ORDERED.

## IV. *PLAINTIFF'S PHOTOGRAPH*

In the amended complaint as well as in the affidavit in support to his opposition to summary judgment, plaintiff has alleged that defendants have possession of an unauthorized photograph taken of him in 1966, and that it was distributed to other agencies in violation of his constitutional right to privacy. He requests that the picture be delivered to him.

Defendants have failed to address this portion of plaintiff's claim. Even though the lack of response by one party does not preclude the court from entering summary judgment in defendant's favor, we are not ready to do so in this case.

It seems to us that plaintiff's claim of invasion of privacy by virtue of the agencies' possession of the unauthorized photo presents substantial issues of fact and interesting questions of constitutional law. Therefore, we are not granting total summary judgment in defendants' favor as they requested in their motion.

Thus, it is hereby ORDERED that a status conference be held before the Honorable Magistrate Juan M. Perez Gimenez, on the matter of plaintiff's privacy claim. At that conference a schedule should be devised for the ultimate submission of this issue to the Court.

IT IS SO ORDERED.