Ellen L. RAY and William H. Schapp, Plaintiffs,

v.

Stansfield TURNER, DCI and the Central Intelligence Agency, Defendants.

Civ. A. No. 76–903.

United States District Court, District of Columbia.

April 5, 1979.

James E. Drew, Washington, D. C., for plaintiffs.

Lee S. Strickland, CIA, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This action is before this court on remand from the United States Court of Appeals for the District of Columbia for reconsideration of claims by the Central Intelligence Agency (CIA) that nine documents may be withheld in their entirety or in part from disclosure under the Freedom of Information Act, 5 U.S.C. § 552 (FOIA).[1] In accordance with the remand from the Court of Appeals, we have instructed the CIA to file a new supplemental affidavit containing a more specific index and itemized justification of the withheld documents and portions of documents. We have also permitted the plaintiffs, Ellen L. Ray and William H. Schaap, to conduct a limited amount of discovery to assist in our review of the exemptions claimed by the CIA. Finally, we have directed the CIA to submit the nine documents to us for an *in camera* inspection. Plaintiffs have filed a motion for summary judgment which challenges the adequacy of the CIA's compliance with the FOIA standards set by the Court of Appeals. The defendants have filed a cross-motion for summary judgment. After our *in camera* inspection of these documents in conjunction with a supplemental CIA affidavit and one set of interrogatories answered by the CIA, we conclude that the CIA has properly determined that withheld documents and portions of documents are exempt from disclosure under the FOIA. We accordingly grant defendants' motion for summary judgment.

## I. Claimed Exemptions

The CIA has claimed that the documents and document segments at issue in this litigation may be withheld from disclosure under the authority of Exemptions 1, 3, 6, 7(C) and 7(F) of the FOIA, 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(6), (b)(7)(C),

1. Document 1 of the ten documents originally at issue has been provided to plaintiffs with only minor deletions. Plaintiffs did not appeal our refusal to order the CIA to release the remainder of document 1. This action therefore involves only documents 2 through 10.

(b)(7)(F). Before discussing the withheld documents, we first set forth the applicable substantive and procedural standards which are to be met if documents are to be properly withheld under these exemptions.

## A. Exemption 1

■ Exemption 1 exempts material that has in fact been properly classified under criteria established by an Executive order as material that should be kept secret in the interest of national defense or foreign policy.[2] Executive Order 11652 and the National Security Council directive of May 17, 1972[3] contain the applicable substantive and procedural criteria for the withheld documents in this litigation. Executive Order 11652 authorizes the withholding of documents if the "unauthorized disclosure [of these documents] could reasonably be expected to cause damage to the national security." A document which satisfies this substantive criterion must also satisfy procedural criteria including (1) classification by one possessing the requisite authority; (2) classification at the proper time; (3) classification by conspicuous markings; (4) identification and segregation of non-classified segments; and (5) the existence of procedures for review and declassification. *See Ray v. Turner*, 190 U.S.App.D.C. 290, 320–21, 587 F.2d 1187, 1217–18, concurring opinion of Chief Judge Wright (1978); *Halperin v. Department of State*, 184 U.S. App.D.C. 124, 565 F.2d 699 (1977).

## B. Exemption 3

Exemption 3 of the FOIA applies to matters which are "specifically exempted from disclosure by statute," but only if the exemption statute either leaves no room for agency discretion to determine whether the information is to be disclosed or if the exemption statute specifies " 'particular criteria for withholding or particular types of matters to be withheld.' 5 U.S.C. § 552(b)(3) (1976)."[4] *Ray v. Turner, supra*, concurring opinion of Chief Judge Wright, 190 U.S.App.D.C. at 322, 587 F.2d at 1219. In the context of this Exemption, there are two applicable statutes which provide substantive criteria for determining whether document segments may be withheld. Under 50 U.S.C. § 403(d)(3), the Director of the CIA is authorized to protect "intelligence sources and methods from unauthorized disclosure." Under 50 U.S.C. § 403g, the CIA is exempt from any law "requiring 'disclosure of the organizations, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.' " The Court of Appeals has determined that both of these statutes fall within the coverage of Exemption 3. *Ray v. Turner, supra*, concurring opinion of Chief Judge Wright, 190 U.S.App.D.C. at 322–23, 587 F.2d at 1219–20; *Goland v. CIA*, No. 76–1800 (D.C.Cir. May 23, 1978).

## C. Exemption 6

■ The CIA has claimed that Exemption 6 of the FOIA is applicable to one of the documents, document 10, at issue in this litigation. There is a two-pronged test applicable to determine whether a document or document segment may be withheld un-

---

**2.** The text of Exemption 1, 5 U.S.C. § 552(b)(1) provides:

(b) This section does not apply to matters that are—
(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;
. . .

**3.** *See* Executive Order, 11652, 3 C.F.R. § 678 (1971–1975 Compilation), *reprinted in* 50 U.S.C. § 401 (Supp. V 1975); National Security Directive of May 17, 1972, 37 Fed.Reg. 10053 (1972).

**4.** The text of Exemption 3, 5 U.S.C. § 552(b)(3) provides:

(b) This section does not apply to matters that are—

. . . . .

(3) specifically exempted from disclosure by statute (other than section 552(b) of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld; . . .

der the authority of Exemption 6. First, the document must be part of a "personnel" file, a "medical" file, or a "similar" type of file. 5 U.S.C. § 552(b)(6). Second, the disclosure of such a file must constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).[5] A document segment satisfies the first part of this test if information about the identity of an individual may be disclosed by the release of a document. *See Department of the Air Force v. Rose*, 425 U.S. 352, 371, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). The second part of this test is met if the privacy interest of the individual outweighs the public's right to governmental information. *Department of the Air Force v. Rose, supra*, at 370–82, 96 S.Ct. 1592; *Getman v. NLRB*, 146 U.S. App.D.C. 209, 450 F.2d 670, 673–77 (1971).

### D. Exemptions 7(C) and 7(F)

One portion of document 10 has been withheld under both Exemption 7(C)[6] and Exemption 7(F)[7] of the FOIA. These Exemptions, like Exemption 6, contain a two-part test for determining whether document segments may be withheld. For both Exemptions, documents may only be withheld if they can first be classified as "investigatory records compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). This test is met if the document focuses with "special intensity upon a particular party" for the purpose of determining whether a law enforcement proceeding should be brought. *Center for National Policy Review on Race and Urban Policy Issues v. Weinberger*, 163 U.S.App.D.C. 368, 502 F.2d 370, 373 (1974). *See also Rural Housing*

*Alliance v. United States Department of Agriculture*, 162 U.S.App.D.C. 122, 498 F.2d 73, 79–82, *supplemented*, 167 U.S.App.D.C. 345, 511 F.2d 1347 (1974). In order to meet the second part of the test for Exemption 7(C), the release of a document must result in "an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). This part of the test is virtually identical to the test for Exemption 6. *See* discussion at section I., C., *supra*. In order to meet the second part of the test for Exemption 7(F), the release of a document must result in an unreasonable risk to the life or physical safety of law enforcement personnel. 5 U.S.C. § 552(b)(7)(F).

### II. Coverage of FOIA Exemptions

Before conducting our *in camera* inspection of the nine documents, we first consider whether eight general types of information which the CIA alleges are contained in these documents fall within the coverage of the claimed exemptions.

█ The first type of information allegedly contained in the documents is information from or information which reveals a cooperative relationship with a foreign intelligence service. This information falls within the substantive criteria of Exemptions 1 and 3. Release of such information could "seriously damage the national security" within the meaning of Exemption 1, by *inter alia*, compromising the confidential diplomatic channels through which this information was acquired. These channels, moreover, clearly constitute an "intelligence

---

5. The text of Exemption 6, 5 U.S.C. § 552(b)(6) provides:

 (b) This section does not apply to matters that are—

 . . . . .

 (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; . . .

6. The text of Exemption 7(C), 5 U.S.C. § 552(b)(7)(C) provides:

 (b) This section does not apply to matters that are—

 . . . . .

 (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of records would . . (C) constitute an unwarranted invasion of personal privacy; . . .

7. The text of Exemption 7(F), 5 U.S.C. § 552(b)(7)(F) provides:

 (b) This section does not apply to matters that are—

 . . . . .

 (7) investigatory records compiled for law enforcement purposes, but only to the extent that production of such records would . . (F) endanger the life or physical safety of law enforcement personnel; . . .

source" within the meaning of Exemption 3.

■ The second type of information allegedly contained in the document segments, information which reveals foreign, covert CIA and/or foreign CIA operations, also falls within the coverage of Exemptions 1 and 3. Disclosure of covert CIA installations and operations could seriously damage the national security by impairing the conduct of our foreign relations with those governments in whose territory the CIA operates. Release of information about CIA installations and operations also constitutes the disclosure of intelligence sources and methods.

■ Four other types of general information also fall within the ambit of Exemption 3. First, information which would reveal the identity of a confidential intelligence source falls within the terms of 50 U.S.C. § 403(d)(3) and therefore within the meaning of Exemption 3. Second, security markings may reveal intelligence methods and intelligence sources to foreign intelligence agencies even though the average citizen may not comprehend these markings. Third, dispatch and cable markings may also reveal intelligence methods and sources to foreign governments. Fourth, CIA employee names, official titles and organizational data are covered by the clear terms of 50 U.S.C. § 403g. This statute exempts the CIA from any law requiring "disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." In specific, well-documented cases, the release of the above four types of information may also result in serious damage to the national security. Exemption 1, in addition to Exemption 3, may therefore bar the release of these types of information.

■ A seventh kind of information, allegedly contained in one of the documents in this litigation, involves the names of individuals other than the plaintiff. Informa-

tion which may identify an individual with another who may have engaged in illegal activities may result in the type of invidious comparison which would constitute a "clearly unwarranted invasion of personal privacy" within the meaning of Exemption 6. The countervailing governmental interest in the enforcement of federal laws may clearly outweigh the public's interest in learning the identities of undisclosed individuals.

■ The eighth and final type of information withheld in this case concerns information allegedly withheld pursuant to the determination of another agency that a document segment is properly classified as an investigatory record compiled for law enforcement purposes. A United States Customs Service document could be such an investigatory record entitled to protection under Exemption 7(F) or Exemption 7(C) if its release would either endanger the life or physical safety of a Customs Service agent or result in an unwarranted invasion of an agent's personal privacy.

### III. *Adequacy of Supplemental Affidavit*

■ We are persuaded that the new supplemental affidavit submitted by the CIA complies with the detailed requirements set forth in *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 1873 (1974). This affidavit contains a specific and detailed description of each document. Unlike the affidavit initially supplied by the CIA in this action, the new supplemental affidavit does not group FOIA exemptions together. It specifically discusses component portions of each document and correlates the discussion of these component portions with the eight types of information for which the CIA claims a FOIA exemption.

### IV. *In Camera* Inspection [8]

In accordance with the standards set forth above, we have conducted an *in cam-*

---

**8.** The very detailed new supplemental affidavit made unnecessary this *in camera* inspection in order to secure a proper *de novo* review of the

agency's action. We conducted such inspection only because very few documents were involved, the inspection of which required little

*era* review of the nine documents at issue in this litigation. We are convinced that unreleased documents (documents 2–6) and the unreleased segments of documents 7–9 fall within the protection of Exemption 3. We are also convinced that document 10 may be withheld under the authority of Exemptions 6 and 7(F).

## A. Documents 2–9

■ We have previously determined that six general types of information fall within the coverage of Exemption 3: (1) information from or information which reveals a cooperative relationship with a foreign intelligence service; (2) information which reveals a foreign, covert CIA installation and/or foreign CIA operation; (3) information which would reveal the identity of an intelligence source; (4) information consisting of CIA employee names, official titles and organizational data; (5) information consisting of security markings; and (6) dispatch and cable numbers, headquarters file numbers and notations and filing information. On the basis of our *in camera* review, we have confirmed our prior conviction that the withheld documents and document segments do, in fact, fall within these general classifications.[9] The withheld documents and document segments refer to particular types of intelligence information which would not be disseminated beyond the intelligence community. Contrary to the contention in plaintiffs' motion for summary judgment, we find that the CIA has conducted a discriminating and thorough review of the withheld documents in its determination that document segments may only be released from documents 7, 8 and 9. To the extent that there is releasable material in documents 2–6 and in the undisclosed portions of documents 7–9, the releasable portions are "inextricably intertwined" with exempt portions. *See Soucie v. David,* 145 U.S.App.D.C. 144, 448 F.2d 1067, 1077–78 (1971). The releasable portions are either combined with exempt material in the same sentence or in a context in which exempt material would be readily discoverable from the release of non-exempt material. *See Morton-Norwich Products v. Mathews,* 415 F.Supp. 78, 82 (D.D.C.1976). Consequently, we further conclude that there are no undisclosed documents or document portions in documents 2–9 which may be released without revealing exempt information.[10]

## B. Document 10

■ Document 10 consists of a one page CIA memorandum containing a copy of a notebook secured by a United States Customs Service agent from an individual at a border checkpoint in a search incident to his arrest for the illegal importation of narcotics into the United States. The CIA properly, under Exemption 3, deleted those portions of this document which refer to an organizational component of the CIA and CIA file numbers. We also find that the

---

additional expenditure of judicial energy in a case which already had gone on far too long. In the case where a substantial number of documents are involved and a detailed *Vaughn* affidavit is filed, we do not believe *in camera* inspection would be warranted and would be most reluctant to conduct such inspection.

**9.** The CIA has relied upon Exemption 1 as an alternative basis for contending that portions of documents 2–9 are exempted from disclosure. On the basis of our *in camera* inspection, it is apparent that the designated document portions do meet the substantive criteria of Exemption 1 in that their release could reasonably be expected to cause damage to the national security. We, however, find it unnecessary to separately consider the procedural criteria of Exemption 1 to determine whether these document portions are properly classified. We instead rest our decision on the ground that Exemption 3 provides an adequate basis for withholding these documents and document portions. Our decision recognizes that "[a]lthough, 'inquiries into the applicability of the two exemptions may tend to merge,' *Phillippi v. CIA,* 178 U.S.App.D.C. 243, 250, 546 F.2d 1009, 1016 n. 14 (1976), Exemption 3 may of course be invoked independently of Exemption 1." *Goland v. CIA, supra* at 16 n. 50.

**10.** Affidavits of Leslie Bacon, Stewart Alberto and Judith Clavir, attached to plaintiffs' motion for summary judgment, contain waivers of their right to privacy under Exemption 6. These waivers do not require us to change our decision that defendant has released all segregable, non-exempt portions of the documents at issue in this litigation.

CIA properly relied upon Exemption 6 to withhold the names of individuals listed in this notebook including the name of the individual arrested.

The copy of the notebook does constitute a personnel file within the meaning of Exemption 6 because it contains information held in a CIA record which identifies individuals as having some form of association with an accused narcotics trafficker. *See Department of the Air Force v. Rose*, 425 U.S. 352, 371, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). The release of the names in this notebook would lead to invidious comparisons because named individuals are linked in an unspecified and unknown manner to an accused narcotics trafficker. The public interest in learning the identities of those unnamed individuals is outweighed by the countervailing public interest in permitting law enforcement officials to retain the privacy needed to investigate and prosecute those who engage in the illegal importation of narcotics.

 We are also satisfied that the CIA has properly accepted the recommendation of the United States Customs Service in its decision to delete the name of a Customs Service agent identified in this document. This copy of a notebook is properly classified as an investigatory record held for law enforcement purposes. We are also satisfied that the Customs Service agent who secured this notebook might well be subjected to a risk of physical harm if his name and position were disclosed or if this agent could be identified by release of the name of the individual arrested. Contrary to the allegation of plaintiffs, the defendants do not make the sweeping claim that the names of Customs Service agents may always be withheld under Exemption 7(F). The protective function of Exemption 7(F) is served where, as here, a Customs Service agent may be endangered because he has acquired information from an individual arrested for transboundary narcotic trafficking.[11] Apart from the release of the name of plaintiff Schapp, there is no other additional information in document 10 which would be separately releasable under the FOIA.

## V. *Conclusion*

After an *in camera* inspection of withheld documents, we are further convinced that there are no documents or segregable document portions to which plaintiff is entitled under the FOIA other than those portions which have been previously released. Documents 2–9, to the extent that they have not previously been disclosed, should be withheld under Exemption 3 of the FOIA. Document 10, with the exception of the name of plaintiff Schaap, should be withheld under Exemptions 3, 6 and 7(F) of the FOIA.

An order consistent with the foregoing has been entered this day.

---

11. It follows from the above reasoning that the name of this Customs Service agent may also be withheld under Exemption 7(C) because its release would constitute an unwarranted invasion of his personal privacy. Moreover, since document 10 may be properly classified as an investigatory record, the names of the other individuals referred to in that record may be withheld under Exemption 7(C) because, as we have previously held, the release of their names would also constitute unwarranted invasion of their personal privacy.