Corliss **LAMONT**, Plaintiff,

v.

**DEPARTMENT OF JUSTICE,**
**Defendant.**

**76 Civ. 3092.**

United States District Court,
S. D. New York.

July 2, 1979.

---

Michael Krinsky, Leonard B. Boudin, Rabinowitz, Boudin & Standard, New York City, for plaintiff.

Robert B. Fiske, Jr., U.S. Atty. for the Southern District of New York, New York City, for defendant; Richard J. Weisberg, Victor J. Zupa, Asst. U.S. Attys., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, Corliss Lamont, the subject of a three-decade period of surveillance by the Federal Bureau of Investigation ("FBI"), petitioned the Department of Justice (the "Department") for disclosure of all FBI records containing information relating to him, pursuant to the Freedom of Information Act of 1966 ("FOIA" or the "Act").[1] In response, the Department released only 274 of the 2739 pages of material in its file on Lamont. He then commenced the instant lawsuit to compel release of the remainder, following which defendant disclosed an additional 1692 pages. Lamont continues to seek full disclosure of all documents and information, which the Department resists

1. Pub.L.No. 89–554, 80 Stat. 383 (1966), 5 U.S.C. § 552.

upon claims of exemption from disclosure under the Act.[2]

Both parties moved for summary judgment; in the alternative, plaintiff requested the Court to examine the withheld materials in camera to determine the validity of the Department's claims of exemption. The Court referred the matter to a Magistrate, who supervised the agency's compilation of an index that keys each withholding to a specific assertion of privilege. The index reflects (1) material released to Lamont without restrictions, (2) material from which portions have been deleted, with indications of such deletions, and (3) material that has been withheld entirely. The Department also submitted several affidavits of FBI agents familiar with the Lamont file supporting the claimed exemptions.[3] The Magistrate issued a report recommending that the Court not examine the nondisclosed material in camera, but instead grant the defendant's motion for summary judgment based solely upon the Government's affidavits and index. Lamont urges rejection of the Magistrate's recommendations and presses his motion for summary judgment or an in camera inspection.

The documents released by the Department provide a useful factual perspective for the legal arguments in the case. They reveal that the FBI's thirty-year interest in plaintiff's activities covers three distinct periods: (1) an intermittent investigation into his suspected connection with the Communist Party and its goals (1942–1953), (2)

an intensive search for evidence and witnesses to support a perjury prosecution based upon his denial of membership in the Communist Party (1953–1955), and (3) a more generalized gathering of information concerning Lamont's organizational activities and his financial contributions to certain groups (1955–1972).

### 1942–1953

In January 1944, FBI Director J. Edgar Hoover directed the preparation of a report on Lamont. The report, dated June 24, 1944, stated that, according to various confidential informants, he was a member of the Communist Party and several so-called "Communist front" organizations and was the author of articles and books, "most of which have followed Marxist ideology, propagandized the Soviet Union and advocated close collaboration between the U.S. and Russia."[4] Shortly thereafter, Lamont was placed on the "Security Index," an FBI surveillance program to monitor the activities of persons considered inimical to the country's internal security.[5] One purpose of the investigation, which continued sporadically for the next nine years, was to obtain "admissible evidence which will prove directly or circumstantially his membership in or affiliation with the Communist Party, and knowledge of the revolutionary aims and purposes of that organization."[6] Throughout his career Lamont persistently has denied any affiliation with the Communist Party.[7]

---

**2.** 5 U.S.C. § 552(b).

**3.** *See generally Vaughn v. Rosen*, 157 U.S.App. D.C. 340, 346–48, 484 F.2d 820, 826–28 (1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) (outlining procedures for compiling record for review in FOIA cases). Four affidavits were submitted by special agent Eugene Glenn, explaining the FBI's justification for each of 115 documents classified under an Executive Order. Four affidavits were submitted by special agent Donald Smith, the second of which contains the Government's policy justifications for its withholdings; attached to the affidavit is the index. Finally, the affidavits of Leon Ulman and Ronald Taylor indicate that the classified material reviewed by agent Glenn was determined to be entitled

to continued classification by the Bureau's internal review committee.

**4.** Document 10; *cf.* document 28 (conflicting information as to Lamont's alleged connection with Communist Party).

**5.** The Index program is described in 2 *Final Report of the Senate Select Comm. to Study Government Operations with Respect to Intelligence Activities*, S.Rep.No. 94–755, 94th Cong., 2d Sess. 54–58, 89–92 (1976) [hereinafter cited as *Church Comm.Rep.*]; 3 *id.* at 542–58.

**6.** Document 25.

**7.** The Lamont file was closed on at least two occasions due to lack of information "showing any direct connection between LAMONT and

*1953–1955*

On September 23, 1953, Lamont affirmed before the McCarthy Committee of the United States Senate that "I am not now and never have been a member of the Communist Party."[8] Thereafter the FBI, at the instigation of the Department of Justice, conducted an extensive investigation to obtain proof upon which to ground a perjury indictment. Despite a massive effort over an extended period,[9] detailed in reports labeled "SECURITY MATTER—C/PERJURY," the FBI in September 1955 notified the Department that, having failed to locate witnesses necessary for a successful prosecution, it had concluded its investigation and had no plans for further evidence-gathering relating to a perjury prosecution.[10]

*1955–1972*

After 1955, the FBI reports on plaintiff were less frequent, but he was nonetheless maintained on the Security Index after periodic agency review because he "continue[d] as Chairman of the Bill of Rights Fund and remain[ed] a contributor to various CP front groups";[11] aside from Lamont's financial contributions, his personal appearances and speeches in behalf of these organizations and his large production of books, articles, and pamphlets were constantly monitored as part of the Index surveillance. Thus the reports after 1955 contain information relating primarily to Lamont's travels, his writings and lectures, and his contact with public groups suspected of affiliation with or instigation by the Communist Party—the National Committee for Anglo-Soviet Friendship, the American Committee for Protection of the Foreign Born, the Emergency Civil Liberties Committee, and the Bill of Rights Fund.[12] Many of these reports are of a pedestrian nature, recording his comings and goings and reiterating large blocks of material culled from prior reports. Although it does not appear that serious consideration was given to the possibility of prosecution for any federal crimes after 1955,[13] Lamont's file remained open until 1972, when his

the Communist Party nor any evidence of espionage activity on [his] part," document 45, but the investigation was reopened when allegedly new leads turned up, *see* documents 46–47, 59.

8. Document 84; *see* documents 77–86 (internal memoranda on Lamont testimony); *cf.* documents 86, 95, 179 (suggesting possible perjury indictment).

9. *Cf.* documents 230 & 251 ("The Lamont case is important due to his international prominence as an apologist for Soviet Russia and Communism. . . . Because of this and because of the interest in the Lamont case expressed by the Department, it is felt that we should exhaust every possible lead in our efforts to determine whether Lamont was ever a Communist Party member.")

10. Document 272; *see* documents 230, 251, 285 (Lamont perjury file closed because FBI could not find witnesses for perjury prosecution). The Department of Justice later secured an indictment against Lamont for contempt of Congress, based on his refusal upon constitutional grounds to answer specific questions touching upon alleged membership in the Communist Party before the McCarthy Committee; the indictment was dismissed by this Court. *United States v. Lamont,* 18 F.R.D. 27 (S.D.N.Y.1955), *aff'd,* 236 F.2d 312 (2d Cir. 1956).

11. Document 335; other reports reevaluating Lamont's place on the Index upheld his classification for substantially the same reason, *see* documents 309, 341, 360, 365, 375, 381, 391, 404, 408, 409, 416, 432, 437, 441, 447.

12. Typical is the 60–page resume compiled on plaintiff at the time he ran for the United States Senate in 1958. Document 326. *See also* documents 408 (reporting on "contributions and general activities" of Lamont—publication of magazine article, attendance at public picnic, speech before rally at Carnegie Hall, etc.), 412–19 (reports on court case brought by plaintiff to enjoin Postmaster General from opening and destroying mail sent from Communist countries into United States), 436 ("The writings of Lamont indicate his sympathy for Soviet Russia and he has recently spoken against United States policy in Vietnam.")

13. While at one point it was suggested that Lamont may have been subject to 50 U.S.C. § 785 ("Denial of Passports to Members of Communist Organizations"), *see* document 384, the FBI considered any such prosecution untenable, since "[n]o evidence of CP membership for years has been reported; thus, no violation of the passport sanction of the Internal Security Act of 1950 is indicated." Document 393; *accord,* document 400.

name was removed from "ADEX," the successor program to the Security Index.

## I

### FOIA In Camera Review

Conceding that the Act reflects " 'a general philosophy of full agency disclosure,' "[14] the Department relies on two of the FOIA's exemptions from disclosure to sustain its withholdings: Exemption 1, which protects properly classified national security material, and Exemption 7, which shields certain investigatory records compiled for law enforcement proposes.[15] The Magistrate found that since "the investigation of plaintiff involved 'national security' and also possible violation of various criminal statutes," the threshold requirements of the two exemptions were satisfied; he recommended granting summary judgment to defendant based upon the further finding that the Department's review of the material and its affidavits established a prima facie case for nondisclosure. Relying on *Weissman v. CIA*,[16] the Magistrate also recommended that plaintiff's petition for an in camera inspection be denied because the Department's affidavits made the claims of exemption in good faith and adequately stated the basis for not disclosing the withheld items.[17]

■ The Court, however, is of the view that its discretion to examine withheld documents in camera is not limited to instances where the Government's affidavits are suggestive of bad faith. The Department's expansive reading of the language of *Weissman*, adopted by the Magistrate, would appear inconsistent with the basic mandate of the Act, as amended in 1974:[18] "the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions . . . and the burden is on the agency to sustain its action."[19] Moreover, the requirement that "[a]ny reasonably segregable portion of a record" shall be released to an FOIA claimant[20] and the fact-specific phrasing of Exemptions 1 and 7[21]

---

14. *Department of Air Force v. Rose*, 425 U.S. 352, 360, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976) (quoting S.Rep.No. 813, 89th Cong., 1st Sess. 3 (1965)); *see NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 220–21, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *EPA v. Mink*, 410 U.S. 73, 79, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

15. 5 U.S.C. § 552(b)(1), (7). *See also* notes 17 & 98 *infra* (other Exemptions relied upon, not presently in dispute).

16. 184 U.S.App.D.C. 117, 123, 565 F.2d 692, 698 (1977) (in Exemption 1 cases, "only where the record is vague or the agency claims too sweeping or suggestive·of bad faith [should] a District Court conduct an *in camera* examination to look for segregable non-exempt matter"). *But cf. Ray v. Turner*, 190 U.S.App.D.C. 290, 295, 587 F.2d 1187, 1192 n. 14 (1978) (per curiam).

17. Magistrate's Report, at 9, 12–15, 23–24. The Magistrate also recommended that with respect to "administrative markings" exempted under 5 U.S.C. § 552(b)(2), the FBI should reprocess Lamont's file, at the Government's expense, pursuant to new Department regulations. This recommendation has not been excepted to by defendant, and the Court adopts it.

18. Pub.L.No. 93–502, 88 Stat. 1561 (1974).

19. *Id.* § 1(b)(2), *codified at* 5 U.S.C. § 552(a)(4)(B).

20. *Id.* § 2(c), *codified at* 5 U.S.C. § 552(b) (end). Prior to the enactment of the 1974 Amendments, this Court held that "[a]n in camera inspection is a proper and practical method of determining what portions [of withheld documents] are justifiably exempt from disclosure and whether there are instances where, as defendant claims, disclosable material is so inextricably intertwined with privileged matter that those portions must be entirely exempted from disclosure." *Kreindler v. Department of Navy*, 363 F.Supp. 611, 613–14 (S.D.N.Y.1973) (footnote omitted); *see Mead Data Central, Inc. v. Department of Air Force*, 184 U.S.App.D.C. 350, 367–370, 566 F.2d 242, 259–62 (1977) (citing cases).

21. Exemption 1 originally protected "matters that are . . . specifically required by Executive Order to be kept secret in the interest of the national defense or foreign policy," 5 U.S.C. § 552(b)(1), but was amended by Pub.L. No. 93–502, § 2(a), 88 Stat. 1562 (1974), to shield only those matters that are not only authorized under such Executive Order, but also "are in fact properly classified pursuant" thereto. Exemption 7 originally applied to "investigatory [files] compiled for law enforce-

indicate that Congress did not intend the Court passively to accept even the most sincerely advanced agency statements without having a factual basis supporting the claimed exemption.

This reading of the statute is supported by the legislative history of the 1974 Amendments, enacted over a strong presidential veto. The Senate Report cited "extensive abuses" in agency classification and withholding of information as the reason for Congress' amendment of the FOIA, so that "someone other than interested parties—officials with power to classify and conceal information"—could undertake an objective and independent review of administrative refusals to disclose information, particularly that cloaked under the rubric of "national security." [22] The Conference Committee accepted the Senate version of the in camera inspection provision and added that "[w]hile in camera inspection need not be automatic, in many instances it will plainly be necessary and appropriate. Before the court orders in camera inspection,

the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure. The burden remains on the Government under this law." [23]

■■■ With respect to classified national security documents, most courts have concurred with the ·general test advanced in *Weissman* : summary judgment should be granted to the Government if its affidavits appear to be made in good faith, describe the contested document so that it logically fits into the asserted exemption, and are substantially unrebutted by plaintiff.[24] A subsequent panel of the District of Columbia Circuit has clarified the first prong of the *Weissman* holding so that "in camera inspection does not depend upon a finding or even tentative finding of bad faith" but may be ordered as a result of "an uneasiness, or a doubt [the judge] wants satisfied before he takes responsibility for a de novo determination." [25] This Court concurs that

ment purposes," 5 U.S.C. § 552(b)(7), but was amended by Pub.L.No. 93–502, § 2(b), 88 Stat. 1562 (1974), to exclude from disclosure such records "only to the extent" that their production would fall under one of six subsections.

**22.** S.Rep.No. 93–854, 93d Cong., 2d Sess. (1974), U.S.Code Cong. & Admin.News, p. 6267, *reprinted in.* Subcomm. on Government Information & Individual Rights of the House Comm. on Government Operations & Subcomm. on Administrative Practice & Procedure of Senate Comm. on the Judiciary, 94th Cong., 1st Sess., Freedom of Information Act & Amendments of 1974 (P.L. 93–502) Source Book: Legislative History, Texts, and Other Documents 183 (Comm.Print 1975) [hereinafter cited as Source Book]. The Senate Report urged that "the courts at the least should be vested with authority to review security classification" of documents to prevent Executive Department overuse of the classification stamp, S.Rep.No. 93–854, 93d Cong., 2d Sess. (1974), *reprinted in* Source Book, *supra*, at 181, a sentiment strongly voiced by members of both political parties in both Houses of Congress during the debates on FOIA. *See id.* at 248, 285, 304, 406, 418, 422, 460, 475, 477.

**23.** H.R.Conf.Rep.No. 93–1380, 93d Cong., 2d Sess. (1974), U.S.Code Cong. & Admin.News p. 6287, *reprinted in* Source Book, *supra* note 22, at 226. It was also stressed, both in the Conference Report, *id.* at 229, and in the congres-

sional debates to override the President's veto of the 1974 Amendments, *id.* at 405–06, that courts should afford substantial weight to agency affidavits supporting exemption of classified data.

**24.** *See Raven v. Panama Canal Co.,* 583 F.2d 169 (5th Cir. 1978), *cert. denied,* ── U.S. ──, 99 S.Ct. 1787, 60 L.Ed.2d 240 (1979); *National Comm'n on Law Enforcement & Social Justice v. CIA,* 576 F.2d 1373 (9th Cir. 1978); *DiViaio v. Kelley,* 571 F.2d 538 (10th Cir. 1978); *Maroscia v. Levi,* 569 F.2d 1000 (7th Cir. 1977) (applying bad faith test to Exemption 1 documents, not Exemption 7 documents); *Bell v. United States,* 563 F.2d 484 (1st Cir. 1977) (Coffin, C. J.); *Aspin v. United States Department of Defense,* 453 F.Supp. 520 (E.D. Wis.1978); *Flower v. FBI,* 448 F.Supp. 567 (W.D.Tex.1978); *Fonda v. CIA,* 434 F.Supp. 498, 502 (D.D.C.1977) (examining Exemption 7 materials in camera); *Frank v. CIA,* 77 Civ. 14 D 1 (S.D.La.1977); *cf. Alfred A. Knopf, Inc. v. Colby,* 509 F.2d 1362, 1369 (4th Cir.) (Haynsworth, C. J.), *cert. denied,* 421 U.S. 992, 95 S.Ct. 1999, 43 L.Ed.2d 772 (1975) (similar test).

**25.** *Ray v. Turner,* 190 U.S.App.D.C. 290, 298, 587 F.2d 1187, 1195 (1978) (per curiam). Several pre-*Ray* district court opinions indicated retreat from the strict interpretation of *Weissman. See Hayden v. National Security Agency,* 452 F.Supp. 247, 250 (D.D.C.1978) (detailed in

a showing of agency bad faith is not a *sine qua non* of an in camera examination; otherwise, the judgment of the officials claiming the exemption—representing an interested party in the litigation—would be conclusive, and the Court's adjudicatory role all but eliminated.[26] While such an examination may be time-consuming, it would be no more burdensome than the line-by-line review that the Court has already made of the several thousand pages that constitute the record in this case. Thus, absent affidavits or other proof that convincingly establish the legal and factual validity of each claim of exemption, the Court, in its discretion, is of the view that an in camera inspection is normally required for it to fulfill its duty to make a de novo determination whether each withholding is justified under the statute and is limited to properly exempt matter.[27]

Upon its review of the Lamont file, the context of deleted or withheld material, and the affidavits setting forth the basis on which the information is asserted to be exempt, the Court is satisfied that the Government has carried its burden of proof as to certain of the deletions and is, therefore, entitled to partial summary judgment on those items, as set forth hereafter. With respect to the balance, the Department will be required to submit the deleted material to the Court for examination, since plaintiff raises material issues as to whether the Government's rationales for nondisclosure in fact justify all the deletions for which they are asserted.

## II

### *Exemption 1: Classified Matters*

Under Exemption 1 as rewritten by the 1974 Amendments, the Government must establish that withheld matters are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."[28] The documents at issue are currently classified under Executive Order 12065,[29] which sets forth detailed procedural mandates for classification and continued classification of material and two general substantive requirements: (1) that the information concern a specified "category" of data related to national security, including "foreign government information; intelligence activities, sources or methods; foreign relations or foreign activities of the United States"[30] and (2) that "an original classification authority also determines that [the information's] unauthorized disclosure reasonably could be expected to cause at least identifiable damage to the national security."[31]

---

camera affidavit); *St. Louis Post-Dispatch v. FBI*, 447 F.Supp. 31, 35 (D.D.C.1977); *Fensterwald v. CIA*, 443 F.Supp. 667, 669 (D.D.C.1977) (in camera inspection of sampling of representative documents).

**26.** *Cf. Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (judicial review should not be based merely on "post-hoc rationalizations" and should be "thorough, probing, in depth"); *United States ex rel. Belfrage v. Shaughnessy*, 113 F.Supp. 56 (S.D.N.Y.1953), *aff'd*, 212 F.2d 128 (2d Cir. 1954) (probing judicial review extends to certain foreign policy determinations).

**27.** *Cf. Ray v. Turner*, 468 F.Supp. 730 (D.D.C. 1979) (on remand); *Ferry v. CIA*, 458 F.Supp. 664 (S.D.N.Y.1978) (conducting in camera examination; relying on both *Ray* and *Weissman* ).

**28.** 5 U.S.C. § 552(b)(1).

**29.** 43 Fed.Reg. 28949 (June 28, 1978). When plaintiff commenced the instant lawsuit, 115 Exemption 1 documents were classified pursuant to Executive Order 11652, 3A C.F.R. 154 (1972). The new Executive Order became effective on December 1, 1978, and the Court directed the FBI to re-evaluate the classified documents under the new criteria of Executive Order 12065. Declassification was found unwarranted for all materials at issue, with the exception of portions of four documents (54A, 74, 260, 332) over twenty years old, which portions were declassified by the Departmental Review Committee and, presumably, have been given to plaintiff.

**30.** Executive Order 12065 § 1–301(c)–(e).

**31.** *Id.* § 1–302. Sections 1–102 to 1–104 detail the standards for the three classification levels, the lowest of which is "confidential"—"information the unauthorized disclosure of which reasonably could be expected to cause identifi-

The FBI's affidavits establish that proper procedures for agency review of classified documents were followed in this case. They also set forth five rationales for non-disclosure, one of which is invoked to support the claim of exemption for each of 115 documents or parts thereof: Disclosure would reveal (1) a secret intelligence method, (2) a secret intelligence source, (3) the FBI's cooperation with a foreign police agency which has asked that its cooperation be kept confidential, (4) the FBI's interest in a specific foreign relations matter, or (5) information classified by a foreign intelligence agency.[32] Lamont concedes that the latter, to wit, the information classified by a foreign intelligence agency, may be withheld but contends that the first four rationales do not implicate the "national defense or foreign policy." [33] However, the Court is persuaded that the interests identified in the FBI's affidavits are such that their disclosure might cause "identifiable damage to the national security": the Government's ability to gather intelligence information essential to national defense and security could be undermined if its secret sources and investigatory methods—whether used in domestic or foreign intelligence operations—were disclosed to the public, and the disclosure of the FBI's interest in a foreign relations matter or cooperation with a foreign police agency could not only damage the Bureau's ability to gather information but could also impair diplomatic relations.[34] Deferring to the expert judgment and policymaking authority of the Executive Department, the Court holds that the Department has satisfied its burden under the first prong of Exemption 1, that the criteria for classification are valid under Executive Order 12065.[35]

The Court's inquiry does not end with this finding, for the withheld material must be shown "in fact" to be "properly classified" under the criteria delineated in the Government's affidavits. The Court has no problem in granting summary judgment to defendant with respect to the documents classified by foreign agencies, as the only factual issue is whether the agency actually made the classification, and plaintiff does not dispute the point.[36] With regard to the other matter, however, the Government's claims for exemption do not. so clearly emerge.

able damage to the national security." Most of the documents classified in the Lamont file are "confidential."

**32.** See Aff. of Jerry Graves ¶ 8; Third Aff. of Eugene Glenn ¶ 7.

**33.** Plaintiff's Memorandum Objecting to the Magistrate's Report, at 21 & n.6.

**34.** Plaintiff argues that since the FBI's operations are primarily domestic and since the context of many of the Exemption 1 withholdings suggests that the Bureau was acting within this country, Exemption 1 does not apply. But courts have consistently protected critical CIA and FBI intelligence sources and methods from disclosure under Exemptions 1 and 3, see Goland v. CIA, 195 U.S.App.D.C. ——, 600 F.2d 989 (D.C.Cir. 1978, amended Mar. 28, 1979) (Exemption 3); Maroscia v. Levi, 569 F.2d 1000, 1003 (7th Cir. 1977) (Exemption 1); Ray v. Turner, 468 F.Supp. 730 (1979) (Exemptions 1 & 3), and have upheld FBI classification of domestic intelligence materials even without a direct link to foreign affairs or national defense, see, e. g., Terkel v. Kelley, 599 F.2d 214 (7th Cir. 1979); Lopez Pacheco v. FBI, 470 F.Supp. 1091 (D.P.R. 1979); Irons v. Levi, 451 F.Supp.

751, 754–55 (D.Mass.1978), rev'd on other grounds sub nom. Irons v. Bell, 596 F.2d 468 (1st Cir. 1979); Lesar v. United States Dep't of Justice, 455 F.Supp. 921 (D.D.C.1978); Flower v. FBI, 448 F.Supp. 567 (W.D.Tex.1978); Linebarger v. FBI, 76 Civ. 1826 (N.D.Cal. Aug. 1, 1977).

**35.** See Alfred A. Knopf, Inc. v. Colby, 509 F.2d 1362 (4th Cir.) (Haynsworth, C. J.), cert. denied, 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 482 (1974); Source Book, supra note 22, at 248 (Rep. Erlenborn, R–Ill.) (under FOIA courts should not review national security criteria, but only review classified material to see that it conforms with criteria); Note, The Freedom of Information Act: A Seven-Year Assessment, 74 Colum.L.Rev. 935 (1974) (courts should defer to agency on policy criteria for classification but should review erroneous factual determinations).

**36.** Documents 54A, 61, 276A (enclosures only), 326B, 327, 336, 336D (page 2), 337A (page 2), 339B (page 2), 375B, 378 (page 2), 378B (pages 2–3), 396A (page 2), 403H, 404A, 423B (page 2).

The first problem with the Department's submissions is that there is no sufficient description to demonstrate that a document logically falls into the category asserted by the affidavits.[37] There is no attempt to explain why each withheld document would have the untoward results of disclosing intelligence sources or methods or revealing the FBI's interest in a foreign relations matter or cooperation with a foreign policy agency. The affidavits are content merely to pigeonhole each withholding in one of the categories. Other courts in the last two years have declined to grant summary judgment where the Government's description of the withheld documents was similarly conclusory or factually inadequate.[38]

Further questions are raised upon analysis of the FBI's explanation of specific deletions. For instance, document 405A is represented to be a one-page letter containing "classified data . . . confined to paragraph two," yet the entire document has been withheld pursuant to Exemption 1. Similarly overbroad assertion of privilege for entire pages or whole documents is replicated in many other documents, with no explanation of why nonconfidential material cannot be segregated from the validly classified information.[39] Another example: pages seven through nineteen of document 44, a report on Lamont, are not disclosed because they would reveal "intelligence sources and methods"; but in other, analogous, reports the Department did excise the names and identifying information while disclosing the bulk of the pages.[40] In sum, the Government's reasons, when carefully compared with the pattern of nondisclosure, suggest that the Department may have withheld segregable nonexempt material when it classified whole documents or parts thereof as "confidential." This is not to say that any bad faith or lack of due diligence is involved, for "[g]overnment officials who would not stoop to misrepresentation may

**37.** Thus the Department's submissions would be inadequate even under the cases cited in note 24 *supra,* for the *Weissman* Court stated that, at the very least, the District Court must be satisfied "that by [the Government's] sufficient description the contested document logically falls into the category of the exemption indicated." 184 U.S.App.D.C. at 122, 565 F.2d at 697.

**38.** *See Founding Church of Scientology of Wash., D. C., Inc. v. National Security Agency,* No. 77–1975 (D.C.Cir. May 15, 1979); *Hayden v. National Security Agency,* 452 F.Supp. 247, 250 (D.D.C.1978) (agency submissions inadequate absent factual summaries of documents); *Irons v. Levi,* 451 F.Supp. 751 (D.Mass.1978), *rev'd on other grounds sub nom. Irons v. Bell,* 596 F.2d 468 (1st Cir. 1979); *cf. Kanter v. IRS,* 433 F.Supp. 812 (N.D.Ill.1977) (affidavits insufficient because they relate to Government's categorizations rather than contents of the documents at issue) (followed in *Tarnopol v. FBI,* 442 F.Supp. 5, 9 (D.D.C.1977)).

*Compare* Aff. of Eloise Page ¶ 2, in *Ray v. Turner,* 190 U.S.App.D.C. 290, 587 F.2d 1187, 1198–99 (1978) (per curiam) (affidavit found to be too conclusory):
 2. This document is a three-page memorandum the subject of which is "Rennie Davis and Friends." It is essentially the debriefing report of a sensitive intelligence source. The majority of the information concerns individuals other than the plaintiffs.

This document has been denied in its entirety, primarily to protect intelligence sources and methods since the release of any meaningful portion would disclose the identity of the source, and further, to protect cryptonyms, names of CIA personnel and CIA organizational data. Thus exemptions (b)(1), (b)(3) and (b)(6) apply.
*with* Third Aff. of Eugene Glenn ¶ 4(a), *Lamont v. Department of Justice,* 76 Civ. 3092 (EW) (S.D.N.Y.) (sample from affidavit upon which Government now seeks summary judgment):
 (14) (Serial 13) is a one-page letter from the Special Agent in Charge (SAC) of the New York FBI Field Office to FBIHQ dated September 7, 1944. This document was classified "Confidential" at its origin and upon review continues to warrant such classification as its disclosure would reveal an intelligence source the protection of which is vital to the national security. The classified data in this document is confined to paragraphs three and four of this one-page document.

**39.** *See* Documents 337A (page 1), 375A, 375C, 378B (page 1), 395B, 403A–03C, 403E–03G, 421A, 423A–23B, 433.

**40.** *Compare* documents 360, 365, 375, 391 (while only certain items on administrative transmittal pages were classified, FBI withheld entire pages) *with* documents 397, 408, 409, 416, 422, 425, 426 (releasing pages containing administrative transmittal information and deleting classified names).

reflect an inherent tendency to resist disclosure." [41]

A final ground for not granting summary judgment is that plaintiff has raised a material issue of fact that would mandate disclosure and declassification if borne out by the Court's in camera inspection: have the intelligence methods and FBI interest in foreign affairs matters already been specifically revealed to the public? If so, there is no reason such material cannot now be disclosed to Lamont. The "sunshine" purposes of the FOIA would be thwarted if information remained classified after it became part of the public domain. [42] The Government raises the valid concern that such a search of the public record would be unduly burdensome, but plaintiff urges that any survey may be confined to seven sources, including the Church Committee Report and the files of two pending court cases. [43] These materials have revealed much about FBI activities and techniques; the Court itself is willing to compare their revelations with the allegedly secret methods and foreign actions that have been classified in Lamont's file to determine whether withholding is justified.

 Accordingly, the Court, for the reasons set forth above, denies summary judgment where entire documents or substantial parts thereof have been withheld pursuant to Exemption 1 because they are said to reveal confidential sources, [44] intelligence methods, [45] or FBI cooperation with a foreign agency or interest in a foreign affairs matter. [46] Only by examining this material can the Court make a confident determination, since the present record is beclouded with conclusory allegations and inconsistencies. On the other hand, the above-mentioned problems do not prevent the Court from granting summary judgment where the defendant has excised just the names of confidential sources and the context and size of the deletion bear out the claim, as noted below. [47] In these instances,

41. *Ray v. Turner,* 190 U.S.App.D.C. 290, 587 F.2d 1187, 1195 (1978) (per curiam); *see Terkel v. Kelley,* 599 F.2d at 217 (7th Cir. 1979) (in camera inspection desirable where there is indication that FBI has withheld whole pages containing segregable matter); note 22 *supra* (congressional concern that classification stamp has been overused).

42. *See Founding Church of Scientology of Wash., D. C., Inc. v. National Security Agency,* No. 77–1975 (D.C.Cir. May 15, 1979) (Exemption 3); *Halperin v. CIA,* 446 F.Supp. 661, 664, 666–67 (D.D.C.1978) (similar); *cf.* note 79 *infra* (citing Exemption 7 cases); 120 Cong.Rec. 36626 (Nov. 20, 1974) (Rep. Reid, R—N.Y.) ("The courts, in my view, have a duty to look behind any claim of exemption, which all too often in the past has been used to cover up inefficiency or embarrassment even in foreign policy matters which, many times, are fully known by other countries but not printable in our own . . . ."); *United States v. Marchetti,* 466 F.2d 1309, 1318 (4th Cir.) (Haynsworth, C. J.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 553, 34 L.Ed.2d 516 (1972).

43. Plaintiff's Memorandum of Law Objecting to Magistrate's Report, at 46 (listing sources). On the other hand, Lamont's argument that the Bureau or the Court could make a similar search of the public record to determine whether confidential sources have been disclosed cannot be accepted because such a search would be virtually limitless.

44. Except as indicated in note 47 *infra,* the Court shall examine the deleted material keyed by the index to Exemption 1 in documents 14, 32, 40, 44*, 67*, 74, 95, 106, 161, 210A, 211, 228B, 232, 260*, 273–74, 295, 314, 326, 326A, 329, 332, 335, 336E, 341, 347, 354, 360, 365, 375, 378C, 379, 381, 391, 393A, 397, 403C, 404*, 406, 408*, 425*, 428, 429*, 437, 441, 447, 449, 453A. Documents that are starred (*) contain certain Exemption 1 material as to which the Court grants summary judgment to defendant, *see* note 47 *infra.*

45. Thus the Court shall examine the deleted material keyed by the index to Exemption 1 in documents 32, 33, 38, 40, 44*, 74, 183–84, 330–31B, 392, 428, 434.

46. Thus the Court shall examine the deleted material keyed by the index to Exemption 1 in documents 40, 219, 276A (except enclosures), 330–31, 333, 336B–36C, 336D (page 1 ¶ 2), 337, 337A (page 1 ¶ 2), 338, 339A, 339B (page 1 ¶¶ 2–3), 339C, 340, 345A–45B, 346, 350, 358–59, 370, 375A, 375C, 377, 378 (page 1), 378B (page 1), 392–93, 395A–95B, 396A (page 1), 403A–03B, 403E–03G, 405–05A, 421A, 423A, 423B (page 1), 424, 428, 433–34.

47. Summary judgment is granted for the defendant with respect to deleted material keyed by the index to Exemption 1 in documents 44 (page 20 Items 4, 9; page 21 Item 13), 67 (page 29 Item 1; page 33 Item 15), 260 (page 11 Item

the record is adequate to give the Court objective verification in support of the Government's position.[48]

## III

*Exemption 7: Law Enforcement Matters*

■ The bulk of the Department's assertions of privilege fall under Exemption 7, which allows nondisclosure of

investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel . . . .

This exemption has been invoked to justify deletion of parts of documents—names, phrases, paragraphs. To support summary judgment upholding nondisclosure of the deleted matter, the Department must prove (1) that the matter is contained in a law enforcement record and (2) that the information falls under one of the six subcategories of the exemption.

## A

### Law Enforcement Records

■ The threshold determination in Exemption 7 cases is whether the information at issue is found in "investigatory records compiled for law enforcement purposes," or, stated another way, whether the documents containing deletions were generated as part of an investigation focused on "preventing, discovering or applying sanctions against noncompliance with federal statutes or regulations."[49] The appropriate test is whether the records indicate that the agency was gathering information with the good faith belief that the subject may violate or has violated federal law, or was merely monitoring the subject for purposes unrelated to enforcement of federal law.[50]

9; page 12 Item 11), 277, 287, 296, 309, 404 (page B Items 1, 5, 7), 407, 408 (page A Item 1; page C Items 10, 16), 409, 416, 422, 425 (page B Items 5, 6). The Court has not granted summary judgment where entire pages that include the names of informants have been withheld.

**48.** In granting in camera review for most of the "confidential" materials claimed to be exempt under Exemption 1, the Court does not address situations where the agency's affidavits are more detailed in their description of the withheld matter or where the matters not disclosed implicate graver and more particular national security concerns. *Cf. Aspin v. United States Dep't of Defense,* 453 F.Supp. 520 (E.D.Wis. 1978) ("secret" intelligence estimates of Russian naval force levels); *Bennett v. United States Dep't of Defense,* 419 F.Supp. 663 (S.D. N.Y.1976) (detailed affidavits describing contents of "secret" and "top secret" documents).

**49.** Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act (1975), *reprinted in* Source Book, *supra* note 22, at 516 [hereinafter cited as Attorney General's Memorandum, with page references to Source Book]. The parties are agreed,

and courts have held, that Exemption 7 is not applicable where documents were not compiled in "law enforcement" efforts. *See Marks v. CIA,* 191 U.S.App.D.C. 295, 301, 590 F.2d 997, 1003 (1978); *Weissman v. CIA,* 184 U.S.App. D.C. 117, 119–20, 565 F.2d 692, 694–95 (1977); *Committee on Masonic Homes of R.W. Grand Lodge v. NLRB,* 556 F.2d 214, 219 (3d Cir. 1977); *Gregory v. FDIC,* 470 F.Supp. 1329 (D.D.C. 1979); *Nationwide Mut. Ins. Co. v. Friedman,* 451 F.Supp. 736, 746 (D.Md. 1978); *Philadelphia Newspapers, Inc. v. United States Dep't of Justice,* 405 F.Supp. 8, 11–12 (E.D.Pa. 1975); *cf.* Note, *Governmental Investigations of the Exercise of First Amendment Rights: Citizens' Rights & Remedies,* 60 Minn.L.Rev. 1257, 1273 (1976). *But see Irons v. Bell,* 596 F.2d 468 (1st Cir. 1979) (Coffin, C.J.) (even though documents not gathered for law enforcement, court will protect them from disclosure under Exemption 7(c) to protect privacy values).

**50.** *See Weissman v. CIA,* 184 U.S.App.D.C. 117, 119–120, 565 F.2d 692, 694–95 (1977); *Committee on Masonic Homes of R.W. Grand Lodge v. NLRB,* 556 F.2d 214, 219 (3d Cir.

■ Plaintiff concedes that the FBI's investigation between 1953 and 1955 was carried out pursuant to the FBI's law enforcement powers, as the documents relate directly to evidence-gathering for a possible perjury prosecution.[51] As to other documents in the Lamont file covering other periods, there is dispute. Defendant relies on the Smith Act[52] and the analogous provisions of the Subversive Activities Control Act ("SACA")[53] to justify the "law enforcement" nature of the FBI's investigation of Lamont from 1942 to 1953 and 1955 to 1972. Those statutes make it unlawful to organize or attempt to organize "any society, group, or assembly of persons who teach, advocate, or encourage the overthrow or destruction of any such government by force or violence; or [to become] a member of, or [to affiliate] with, any such society, group, or assembly of persons, knowing the purposes thereof."[54] The Bureau's information on Lamont in the 1940's can reasonably be read to suggest a basis for a claim of possible violation of the literal terms of the Smith Act, and one stated purpose of the FBI's efforts was to obtain evidence of alleged violation of the Act for purposes of a potential prosecution. While the investigation was closed at least twice due to lack of concrete evidence, the agency reopened it

upon its pursuit of new leads designed to uncover such evidence. The investigation of Corliss Lamont from 1942 to 1953 was sufficiently related to the discovery of possible infractions of the Smith Act to bring the records of that period under the threshold requirement in Exemption 7.

■ What is less clear is the connection between law enforcement and the FBI's continued surveillance of Lamont from 1955 to 1972. Plaintiff was maintained on the Index only because of his association with various educational and political organizations which enforcement authorities suspected were Communist fronts, but there is nothing in the record now before the Court to indicate that the FBI conceived of this association as violative of the Smith Act or evidencing a possibility of future violation of that law.[55] Indeed, such a belief could hardly have been a "good faith" one in light of the Supreme Court's interpretation of the Act in the late 1950's and early 1960's. The Court authoritatively read the Smith Act (and the analogous provisions of the SACA) to allow prosecution only of those individuals who were active members of the Communist Party with the specific intent to advocate the forcible overthrow of the United States Government.[56] The Lamont

1977); *Linebarger v. FBI*, 76 Civ. 1826 (N.D. Cal. Aug. 1, 1977) (documents must "reflect a sufficient nexus between the conduct of the investigation and legitimate concern for national and internal security as to warrant their classification as being for law enforcement purposes"); *Irons v. Levi*, 451 F.Supp. 751, 755 (D.Mass. 1978), *rev'd on other grounds sub nom. Irons v. Bell*, 596 F.2d 468 (1st Cir. 1979); *Kanter v. IRS*, 433 F.Supp. 812 (N.D.Ill. 1977); *Black v. Sheraton Corp. of America*, 371 F.Supp. 97, 102 (D.D.C. 1974) (denying application of Exemption 7 since FBI investigation was admittedly not related to law enforcement proceeding, but was conducted simply for intelligence purposes); *cf.* 5 U.S.C. § 552a(j)(2) (Privacy Act definition of criminal law enforcement records).

51. 18 U.S.C. § 1621.

52. Act of June 28, 1940, § 2(a), 54 Stat. 670, 671. In 1948, the Smith Act was repealed and reenacted in codified form at 18 U.S.C. § 2385.

53. Act of Sept. 23, 1950, 64 Stat. 987, *codified at* 50 U.S.C. §§ 781 *et seq.*

54. 18 U.S.C. § 2385; *see* 50 U.S.C. § 783(a). *See also* 18 U.S.C. §§ 2384–2385; Third Aff. of Donald Smith (two-page statement of grounds for FBI investigation of Lamont).

55. Text accompanying notes 11–13 *supra*.

56. Justice Harlan in *Scales v. United States*, 367 U.S. 203, 220, 81 S.Ct. 1469, 1481, 6 L.Ed.2d 782 (1961), summarized the holding of his earlier decision in *Yates v. United States*, 354 U.S. 298, 331, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1956): To convict under the Smith Act or the SACA, a jury must find "(1) the Communist Party advocated the violent overthrow of the Government, in the sense of present 'advocacy of action' to accomplish that end as soon as the circumstances were propitious; and (2) petitioner was an 'active' member of the Party, and not merely 'a nominal, passive, inactive or purely technical' member with knowledge of the Party's illegal advocacy and a specific intent to bring about the violent overthrow 'as speedily as circumstances would permit.' "

file after 1955 contains no suggestion of such activity; and, in any event, the FBI's suspicions about Lamont's alleged association with the Communist Party are limited to his activities in the 1930's and 1940's, not the period after 1955.[57] Moreover, the information collected by the FBI after 1955 related primarily to Lamont's speeches, publications, and public activities—precisely the sort of generalized monitoring and information-gathering that are not related to the Bureau's law enforcement duties.[58]

On the present record, there appears no connection between the post-1955 surveillance of plaintiff and good-faith enforcement of the Smith Act. Defendant further claims, though, that the entire file on Lamont was related to law enforcement goals because it was part of the Security Index program; plaintiff counters that the Index was sanctioned by no federal statute and was a program unrelated to valid law enforcement efforts. The only statute mentioned by either party is the Emergency Detention Act, which allowed "[t]he deten-tion of persons who there is reasonable ground to believe probably will commit or conspire with others to commit espionage or sabotage . . . in a time of internal security national emergency."[59] The problem with defendant's reliance on the Detention Act is that the FBI does not appear to have operated the Index program under the auspices or criteria of the Detention Act. The criteria for inclusion on the Index were far broader than those of the Detention Act;[60] in fact, when the statute was passed in 1950, the FBI found it "unworkable" and did not alter the Index program, which it had initiated in 1943.[61] Not only is there no mention in the Lamont file of the Detention Act, but after 1955 it is patently clear that it was Lamont's lecturing, writings, and financial contributions that concerned it.

The Court expresses no opinion as to the legality or wisdom of the Index, but in the instant case it cannot say that the generalized surveillance of Lamont due to his listing on the Index was related to the FBI's duties to enforce federal law. Thus the

---

57. Note 13 *supra*. Even if Lamont were still thought to be a member of the Communist Party in the 1960's, that alone would be insufficient basis for prosecution. *See Schware v. Board of Bar Examiners*, 353 U.S. 232, 246, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); *Boorda v. SACB*, 137 U.S.App.D.C. 207, 421 F.2d 1143 (1969), *cert. denied*, 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970) (membership in Communist Party protected by First Amendment). Defendant's reliance upon *Albertson v. SACB*, 382 U.S. 70, 77, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965), is misplaced. *Cf.* SACA § 4(f), 50 U.S.C. § 783(f); *Law Students Civil Rights Research Council, Inc. v. Wadmond*, 401 U.S. 154, 164–66, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971).

58. *Black v. Sheraton Corp. of America*, 371 F.Supp. 97, 102 (D.D.C. 1974); *cf.* 5 U.S.C. § 552a(e)(7) ("Each agency that maintains a system of records shall . . . maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute . . . or unless pertinent to and within the scope of an authorized law enforcement activity . . . ."); Attorney General's Memorandum, *supra* note 49, at 516 (records of general information-gathering for monitoring purposes not for law enforcement purposes "except where the purpose for which the records are held and used by the agency becomes substantially violation-oriented").

59. Act of Sept. 23, 1950, § 101(14), 64 Stat. 1019, *codified at* 50 U.S.C. § 811(14) (repealed by Pub.L. No. 92–128, § 2(a), 85 Stat. 348 (1971)).

60. *Compare* 3 *Church Comm. Rep., supra* note 5, at 440 ("potential dangerousness" of persons placed on Index based mainly on "membership, affiliation or activity indicating sympathy with the principal tenets of the Communist Party or similar ideological groups and the Nationalist Party of Puerto Rico") *with* SACA § 4(f), 50 U.S.C. § 783(f) (membership in "any Communist organization" no per se violation or proof of dangerousness under Smith Act or related statutes). *See also* document 273, at 14 (although Lamont did not "technically" meet criteria for inclusion on Security Index, he was nonetheless retained on Index because of affiliation with alleged Communist front groups, speeches at public events, and published articles and books).

61. 3 *Church Comm. Rep., supra* note 5, at 442–47. Indeed, the provisions of the Detention Act were never placed in operation by the Department of Justice. 1 Emerson, Haber, and Dorsen's Political and Civil Rights in the United States 86 (N. Dorsen, P. Bender & B. Neuborne eds. 4th ed. 1976).

Court at this time must deny summary judgment based on Exemption 7 for documents generated after the close of the perjury investigation. This does not settle the matter completely. Recognizing that "the focus of domestic surveillance may be less precise than that directed against more conventional types of crime," the Court will entertain further proof, including in camera submissions, that the post-1955 surveillance was based on a law-enforcement objective.[62]

## B

### Exemption 7 Subcategories

■ When Congress amended the FOIA in 1974, it intended to narrow Exemption 7's application so that the Government would be required to specify some harm in order to claim the exemption, because material "ought not be exempt merely because it can be categorized as an investigatory file compiled for law enforcement purposes."[63] Consequently, even though the Department has carried its burden of proving that certain records in the Lamont file were compiled for law enforcement purposes, to justify summary judgment for its deletions within those documents, it must also estab-

lish that each deletion falls within one of the six subcategories. The Government here argues that the release of data would "(C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source," or "(E) disclose investigative techniques and procedures." .

### Exemption 7(C)

[11] Defendant relies on Exemption 7(C) ("unwarranted invasion of personal privacy") to justify withholding the names of FBI agents, other governmental employees working on the Lamont investigation, third parties associated with plaintiff or cooperating in the investigation, and other subjects of FBI inquiry or suspicion, together with any information that might identify these individuals. Plaintiff's main argument is that disclosure of mere names and identifying information does not invade "personal privacy," which, according to his view, is only implicated where the information is of an "intimate" nature. The Court finds plaintiff's rather fine distinction unsupported by the case law[64] and agrees with defendant's position: Exemption 7(C) protects against the disclosure of the identi-

---

**62.** *United States v. United States District Court*, 407 U.S. 297, 322, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). The suggestion made by Chief Judge Coffin that *all* records of criminal law enforcement agencies pass the Exemption 7 threshold, *see Irons v. Bell*, No. 78–1350 (1st Cir. Mar. 27, 1979), has not been pressed by defendant. The Court does not, therefore, address the arguments raised in this decision, except to note that the legislative history provides some support for the view that Congress assumed that not all FBI records would fall within Exemption 7. *See* Source Book, *supra* note 22, at 351 (letter from Sen. Hart to FBI) (Exemption 7 applies only if "investigation might result in some government 'sanction' "), 391 (Exemption 7(D) applies only if FBI intelligence investigation is "lawful"), 440. *See also Marks v. CIA*, 191 U.S.App.D.C. 295, 305–308, 590 F.2d 997, 1007–10 (1978) (Skelly Wright, J., concurring in part).

**63.** Source Book, *supra* note 22, at 332–33 (Sen. Hart, D–Mich., author of 1974 amendment to provisions of Exemption 7); *see NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224–34, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) (interpreting intent of Congress in adopting Hart Amendment).

**64.** While the privacy right protected by the Constitution may be more narrow in scope, *see Paul v. Davis*, 424 U.S. 692, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), courts have repeatedly held that the FOIA "privacy" Exemptions 6 and 7(C) were intended to prevent disclosure of names or identifying information that would embarrass or injure the reputation of private individuals, *see Department of Air Force v. Rose*, 425 U.S. 352, 376–77, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *Pacific Molasses Co. v. NLRB*, 577 F.2d 1172 (5th Cir.1978); *Maroscia v. Levi*, 569 F.2d 1000 (7th Cir.1977); *Deering Millikin, Inc. v. Irving*, 548 F.2d 1131, 1136 (4th Cir.1977); *Wine Hobby USA, Inc. v. United States Internal Revenue Serv.*, 502 F.2d 133 (3d Cir.1974); *Common Cause v. Ruff*, 467 F.Supp. 941 (D.D.C.1979); *Providence Journal Co. v. FBI*, 460 F.Supp. 778, 784–86 (D.R.I.1978); *Ferry v. CIA*, 458 F.Supp. 664, 666 (S.D.N.Y.1978); *Sonderegger v. United States Dep't of Interior*, 424 F.Supp. 847 (D. Idaho 1976). Plaintiff's citation of *Title Guarantee Co. v. NLRB*, 407 F.Supp. 498 (S.D.N.Y.1975), *rev'd on other grounds*, 534 F.2d 484 (2d Cir.), *cert. denied*, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976), is not persuasive.

ty of individuals where such disclosure would likely cause embarrassment or harassment to the third party, either because sensitive, derogatory, or intimate personal information about him or her is contained in the file *or* because the person's cooperation with an FBI investigation would itself prove embarrassing.[65]

▮ Exemption 7(C)'s protection of personal privacy is not an absolute one, for the exemption prevents disclosure only if the invasion is "unwarranted." To make this determination, courts weigh "the privacy interest and the extent of the invasion thereof against the public interest in disclosure . . . 'tilt[ing] the balance in favor of disclosure.'"[66] Although plaintiff contends that knowing the precise identity of individuals who assisted in FBI investigations is "crucial" to a public assessment of the nature of the Bureau's domestic intelligence operations, most courts have disagreed and have balanced in favor of the privacy right. Thus it has consistently been held that Exemption 7(C) protects the names of FBI agents and other nonpolicymaking government officials associated with investigations,[67] for "[p]ublic identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives. While the right of privacy to these FBI agents is perhaps minimal . . . the public interest in the identification of the FBI agents who conducted the investigation of alleged civil rights violation [appears] to be even less."[68] Similarly, the exemption shields identities of third persons subject to FBI inquiries or cooperating in such investigations.[69]

▮ The Court grants summary judgment for defendant for the names excised pursuant to Exemption 7(C) in the file from 1942 to 1955. The deletions are supported by law and are verified by their size and context; that is, where the blacked-out portion is limited to space into which a name (and an address or occupation) would fit and where the context of the sentence indicates a name is mentioned (for example, deleted names of FBI agents are often preceded by "SA" or "special agent") the Court is satisfied that the exemption is properly invoked.[70] On the other hand, where the excised matter covers whole paragraphs or

---

**65.** *See Nix v. United States*, 572 F.2d 998, 1006 (4th Cir.1978); *St. Louis Post-Dispatch v. FBI*, 447 F.Supp. 31 (D.D.C.1977); *Congressional News Syndicate v. United States Dep't of Justice*, 438 F.Supp. 538, 543 (D.D.C.1977); Attorney General's Memorandum, *supra* note 49, at 519–20 ("It is thus clear that the privacy interest in [Exemption 7(C)] . . . must be deemed generally to include information about an individual which he could reasonably assert an option to withhold from the public at large because of its int.macy or its possible adverse effects upon himself or his family."); cases cited in note 64 *supra.*

**66.** *Congressional News Syndicate v. United States Dep't of Justice*, 438 F.Supp. 538, 542 (D.D.C.1977) (quoting *Getman v. NLRB*, 146 U.S.App.D.C. 209, 213, 450 F.2d 670, 674 (1971)); *see* note 90 *infra.*

**67.** *See Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir.1977); *Johnson v. Department of Justice*, 77 Civ. 2276 (E.D.La. Apr. 25, 1978); *Malloy v. United States Dep't of Justice*, 457 F.Supp. 543, 546 (D.D.C.1978); *Varona Pacheco v. FBI*, 456 F.Supp. 1024, 1030 (D.P.R.1978); *Flower v. FBI*, 448 F.Supp. 546 (W.D.Tex.1978); *Tarnopol v. FBI*, 442 F.Supp. 5 (D.D.C.1977); *Rafter v. FBI*, 77 Civ. 1134 (MEF) (S.D.N.Y.

July 21, 1977) (Frankel, J.); *Ott v. Levi*, 419 F.Supp. 750, 752 (E.D.Mo.1976). The Court has discovered only one reported decision denying deletion of FBI agents' names, *see Ferguson v. Kelley*, 448 F.Supp. 919, 924 (N.D.Ill. 1977), but that Court later reversed itself and ordered the names not to be disclosed, *Ferguson v. Kelley*, 455 F.Supp. 324, 327 (N.D.Ill. 1978).

**68.** *Nix v. United States*, 572 F.2d 998, 1006 (4th Cir.1978) (footnote omitted).

**69.** *Id.* at 1005–06; *Maroscia v. Levi*, 569 F.2d 1000 (7th Cir.1977); *Lopez Pacheco v. FBI*, 470 F.Supp. 1091 (D.P.R.1979); *Smith v. Flaherty*, 465 F.Supp. 815, 823–24 (M.D.Pa.1978); *Ferguson v. Kelley*, 448 F.Supp. 919, 922–23 (N.D.Ill. 1977); *Tarnopol v. FBI*, 442 F.Supp. 5, 8 (D.D. C.1977); *Forrester v. United States Department of Labor*, 433 F.Supp. 987 (S.D.N.Y.1977); *Day v. FBI*, 76 Civ. 3209 (S.D.N.Y. Mar. 10, 1977); *Tax Reform Research Group v. IRS*, 419 F.Supp. 415, 419–20 (D.D.C.1976).

**70.** Names of FBI agents and other governmental employees have been properly excised from documents 10–11, 13–14, 16–18, 22, 26, 31, 39, 40–41, 44–46, 50, 52–54, 61, 64, 66–67, 69, 71–

several lines—more than is necessary to strike out a name and address—the Court, in its discretion, directs that the material be submitted for in camera inspection. This relates mainly to information that defendant claims would identify the third persons or agents if disclosed. The Court finds the claim tenable as a matter of law [71] and grants the Department summary judgment for brief deletions of such information but desires to examine the material where the excisions are lengthy, so that withholdings will be limited to segregable exempt matter.[72]

■ Finally, the Court's own examination of the documents and the context of the deleted names establishes that certain third-party names are not properly with-

held—names of Lamont's associates when they are not mentioned as sources of FBI information or in a derogatory context, as well as names of persons who participated prominently in events that are part of the public record. In these instances, there is virtually no privacy interest of third parties that is implicated, for disclosure to plaintiff of his acquaintances would presumably not cause embarrassment to them, and persons participating in public events should assume that their conduct will be reported. Accordingly, the Court orders the release of these third-party names to plaintiff.[73]

### Exemption 7(D)

The Government relies, next, on Exemption 7(D) ("identity of confidential sources")

73, 74–76, 78, 81–82, 84, 88, 89, 91–93, 94, 98, 101–04, 107–08, 114, 116–19, 122–23, 128, 133–36, 140, 144, 146, 149, 151, 153, 156–57, 159–60, 161–63, 167, 171, 173–74, 176–80, 182–84, 186–88, 190, 192–93, 196–203, 205, 207–10, 212–13, 215–19, 220–24, 230, 232–33, 236–37, 239, 242–44, 246, 247, 249–50, 251–53, 255, 258, 260–62, 263–66, 268, 271–72.

Except as indicated in notes 72 & 73 *infra*, deletion of names of third parties keyed by the index to Exemption 7(C) and cross-referenced to justification 4D (and subsections 4D(1)–(3)) have been properly excised from documents 10*, 16*, 36*, 38, 40*, 48, 50, 64, 67*, 69*, 71*–72*, 74*, 76*, 78, 88–89*, 91–92, 98*, 100*–01*, 102, 107–08*, 109*, 114–16, 118, 123, 126, 128–30, 133, 142, 144–46, 149–50, 154, 156, 161*, 162, 165, 167*, 168, 173, 177*, 178–80*, 181–82, 184, 186, 196, 201–03, 207*–08, 210, 212, 218*–20, 222, 224, 227, 233–34, 240*, 242, 245, 248*–49, 255–56, 260*, 271. Documents that are starred (*) contain certain portions that the Court will inspect in camera, *see* note 71 *infra*, or will order to be disclosed to plaintiff, *see* note 73 *infra*.

**71.** *Ferguson v. Kelley*, 448 F.Supp. 919, 923, 925–26 (N.D.Ill.1978) (conducting in camera inspection and mandating disclosure of information not identifying third persons); *see Department of Air Force v. Rose*, 425 U.S. 352, 95 S.Ct. 1115, 43 L.Ed.2d 392 (1976) (Exemption 6); *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir.1979) (Exemption 7(C)); *Smith v. Flaherty*, 465 F.Supp. 815, 822–23 (M.D.Pa.1978) (Exemption 7(C)); *St. Louis Post-Dispatch v. FBI*, 447 F.Supp. 31, 38–39 (D.D.C.1977) (Exemption 7(D); finding claim valid as matter of law but ordering release of certain documents which would not identify confidential source); *Shaver v. Bell*, 433 F.Supp. 438, 440 (N.D.Ga.1977) (Exemption 7(C)).

**72.** Deletions keyed by the index to Exemption 7(C) and cross-referenced to justification 4D (and subsections 4D(1)–(3)) that the Court shall examine in camera are found in documents 30B, 36 (¶¶ 5–6), 46, 67 (page 4 ¶ 1 lines 1–3), 72 (page 1 ¶ 3), 74 (page 1 ¶ 3 lines 1–4 & ¶ 4 lines 1–3; page 2 ¶ 4; page 3 ¶ 1; page 10 ¶ 7; page 11 ¶¶ 1–2), 76 (¶ 1), 98 (page 1 ¶ 2), 100 (except names in lower left), 101 (page 5 ¶¶ 1–2), 108 (¶¶ 1–2), 109 (¶ 4 lines 1–4), 161 (page 23 ¶ 3 through page 24), 177 (page 2 ¶ 4 to top page 3; page 3 ¶ 2 through page 4), 180 (page 2 lines 1–4), 207 (page 15 ¶¶ 4–5), 212 (lines 5, 7–9), 218 (page 1 lines 17–18; page 2 lines 6–9), 240 (page 1 ¶ 2 lines 3–5), 248 (¶ 3 lines 5–7), 260 (page 3 ¶¶ 4–6; top page 4 & ¶¶ 1, 5; page 12 ¶ 2; page 13 ¶¶ 1–4; page 16 ¶¶ 2, 4–5; page 17 ¶ 3; page 18 ¶¶ 1–3), 262A, 271 (page 8 ¶ 2 lines 5–7), 272.

**73.** *See Providence Journal Co. v. FBI*, 460 F.Supp. 778, 790–91, 795 (D.R.I.1978) (public figures); *Information Acquisition Corp. v. Department of Justice*, 444 F.Supp. 458 (D.D.C.1978) (de minimis privacy interests not protected by Exemptions 6 & 7(C)). Thus deletions keyed by the index to Exemption 7(C) and cross-referenced to justification 4D or 4D(1) shall be released to plaintiff with respect to documents 10 (page 11 ¶ 10; page 12 ¶ 7; page 13 ¶¶ 1, 4; page 14 ¶¶ 3, 6; page 17 ¶ 1), 13 (page 2 ¶ 1), 16 (page 6 ¶ 2), 36 (¶ 3 lines 3, 4, 6, 9), 37 (¶ 2), 39 (page 1 ¶ 1 under Details), 40, 49 (page 2 ¶ 1; page 3 ¶ 2; page 6 ¶¶ 3, 6), 59 (page 158), 67 (page 23 ¶ 3; page 33 Item T-19 col. 2), 69 (¶ 3 line 4), 71 (page 2 ¶¶ 1, 2, 4), 72 (page 1 ¶ 2 lines 2, 4, 5), 73, 89 (¶ 5 line 2), 101 (page 6 ¶¶ 2–3), 129 (¶ 2), 167 (page 1 line 16), 207 (page 7 ¶ 3), 260 (page 16 ¶ 2).

to justify deletions of the names of the FBI's confidential informants and other confidential sources, as well as data they furnished that might identify them. Plaintiff does not question the application of this exemption to names of informants but contests the claim of privilege for names of other sources by demanding a factual showing that those interviewees were actually given "an express or implied assurance of confidentiality." For an investigation that ranged over a period of thirty years, it is questionable, as a practical matter, how the Department could ever make such a showing. For this reason, courts have taken a "functional" approach to such claims and have denied disclosure of the names of interviewees and other sources where it was apparent that the agency's "investigatory function depends for its existence upon information supplied by individuals who in many cases would suffer severe detriment if their identities were known." [74] The Court finds here that the names of interviewees and other confidential sources have been omitted "in circumstances from which such an assurance [of confidentiality] could be reasonably inferred," that is, in the course of an investigation that must have appeared highly serious and sensitive to the persons interviewed.[75]

Not only should the names of interviewees be withheld under Exemption 7(D) on the grounds that they could reasonably have assumed that their identities would not later be revealed, but the Court ⋆further holds that since disclosure of their cooperation might now be embarrassing to them, their identities are also protected by Exemption 7(C).[76] Citizens who feel they have a duty to respond to governmental investigatory inquiries, even though they may disagree or question its purpose, are entitled to protection; their cooperation should not be penalized by public exposure at a later time, when it may not meet with community approbation. Thus the Court sustains the Department's excision of names contained in the Lamont file for the period 1942 to 1955, where the size and context of the deletion make it clear that it is limited to the name, address and occupation of a confidential informant (often signaled by a symbol or appearing in lists) or an interviewee.[77] However, in those instances where the deletion embraces additional information that might include non-exempt matter, summary judgment will be denied pending inspection of such docu-

74. *Kaminer v. NLRB*, 90 L.R.R.M. 2269, 2272 (S.D.Miss.1975); *see Lopez Pacheco v. FBI*, 76 Civ. 83 (D.P.R. May 10, 1979) (customary practice of FBI in obtaining information is presumptive evidence of implied assurance of confidentiality); *Mobil Oil Corp. v. FTC*, 74 Civ. 311 (MEL) (S.D.N.Y. Dec. 7, 1978) (Lasker, J.); *T.V. Tower, Inc. v. Marshall*, 444 F.Supp. 1233 (D.D.C.1978); *Morton-Norwich Prods., Inc. v. Mathews*, 415 F.Supp. 78, 81 (D.D.C.1975).

75. H.R.Conf.Rep.No. 93–1380, 93d Cong., 2d Sess. (1974), *reprinted in* Source Book, *supra* note 22, at 230; *cf. id.* at 351 (Memorandum Letter from Sen. Hart to FBI); *Nix v. United States*, 572 F.2d 998, 1004–05 (4th Cir.1978); *Church of Scientology of Cal. v. United States Dep't of Justice*, 410 F.Supp. 1297 (C.D.Cal. 1976).

76. *See Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir.1977); *Smith v. Flaherty*, 465 F.Supp. 815, 822–23 (M.D.Pa.1978) (relying on both Exemption 7(C) and 7(D) to protect identities of sources in FBI investigation); *Varona Pacheco v. FBI*, 456 F.Supp. 1024, 1030–32 (D.P.R.1978) (same); *Lesar v. United States Dep't of Justice*, 455 F.Supp. 921, 925 (D.D.C.1978); *Forrester v.*

*United States Department of Labor*, 433 F.Supp. 987 (S.D.N.Y.1977); *Shaver v. Bell*, 433 F.Supp. 438 (N.D.Ga.1977); *Electronic Memories & Magnetics Corp. v. United States*, 431 F.Supp. 356, 360 (C.D.Cal.1977) (relying on both Exemption 7(C) and (D)).

77. Except as indicated in note 78 *infra*, deletions keyed by the index to Exemption 7(D) (or to both 7(D) and 7(C)) and cross-referenced to justification 4E (and its subsections) are properly exempt from disclosure. Such deletions may be found in documents 3, 10, 13, 16*, 34, 36, 38, 40*, 44*, 49*, 54, 57, 58, 60, 61*–62, 67*, 69, 72*, 74*, 76*, 78*, 79, 81*, 85*, 87, 89*, 91*, 92, 94*, 96, 99*, 101*, 102*, 106*, 107, 110–11, 113–14*, 116–18, 122*–23*, 127*–29, 131–32, 135–38, 140–41, 143–44, 146*–52*, 153–54*, 156–57, 159–60, 161*–64, 166–67, 169*–71, 175–76, 185*, 188, 196, 198, 205–07*, 208*, 210, 213–17*, 219, 221–22*, 223*–28, 229–33, 237–39, 241–43*, 244*, 246–48, 250*–53, 257–60*, 261*, 262, 263–66, 271*. Documents that are starred (*) contain material the Court will inspect in camera, *see* note 78 *infra*.

ments;[78] in conducting its in camera review the Court will, when in doubt, defer to the judgment of the Department and will sustain its claims of exemption where the context of the material bears out the assertion that it is confidential information furnished only by the confidential sources or might identify the source if revealed to plaintiff.

### Exemption 7(E)

■■■■ Exemption 7(E) precludes disclosure of "investigative techniques and procedures." While the Government has used this exemption "sparingly," its invocation in specific documents has not been clearly articulated in its affidavits. While it is true, as defendant contends, that the FBI's success depends in large part on secret methods and techniques, the conclusory affidavits give the Court no factual basis to rule that the withheld portions have not in fact been disclosed to the public heretofore. Since Congress did not intend that Exemp-

tion 7(E) apply to "routine techniques or procedures which are generally known outside the Government,"[79] the Court would order disclosure of matter already part of the public domain. Accordingly, the Court will conduct its own examination of the material withheld under this exemption.[80]

### IV

### Exemption 6: Private Matters

■■ The finding by the Court that defendant has not yet established that the files from 1955 to 1972 qualify under Exemption 7 does not end the present inquiry. Although the Government basically relies on Exemption 7 in its deletions of names and identifying information contained in reports, some of the cases cited in the Government's memoranda refer to Exemption 6, which protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal

**78.** Deletions keyed by the index to Exemption 7(D) (or to both 7(D)) and 7(C)) and cross-referenced to justification 4E that the Court shall examine in camera are found in documents 16 (page 7 ¶ 5 lines 1–3; page 8 ¶ 2 lines 4–6), 20, 30B, 40 (page 4 ¶ 3; page 5 ¶ 4; page 7 ¶ 4; page 20 ¶ 1; top 21), 40A, 44 (except deletions on pages 20–21), 47A, 49 (except deletion on page 1 ¶ 6), 59, 61 (page 1 lines 6–9; page 3 ¶ 3 to page 7 ¶ 2), 61A, 67 (page 1 lines 13–17, 20–24; page 12 ¶ 4; page 17 ¶ 5; page 27 ¶ 5; page 31 Item T–10 col. 2; page 34 Item T–24 col. 2), 72 (page 1 ¶ 2), 74 (page 2 ¶ 1; page 4 ¶ 4; page 5 ¶¶ 3–4; page 6 ¶¶ 1–3, 7–8; page 7 ¶ 7; page 8 ¶¶ 1, 6; page 11 ¶¶ 3–6), 76 (¶¶ 2–3, 6), 77, 78 (except page 1 ¶ 5 line 6), 81 (¶¶ 2–4), 85 (page 1 ¶ 2), 89 (page 1 ¶ 2; page 2), 91 (page 5 top; page 6 ¶¶ 3–5; page 8 ¶ 1; page 9 ¶¶ 1, 4; page 10 ¶ 1), 94 (¶ 8), 99 (¶¶ 2, 4), 100, 101 (page 4 ¶ 2 lines 10–14; page 5 ¶ 5), 102 (page 2 ¶ 4), 103, 106 (page 1 ¶ 4 lines 4–8), 112, 114 (page 2 ¶¶ 2–3; page 4 ¶ 6; page 5 ¶ 3 lines 4–14; pages 7–8) 122 (page 1 ¶ 2 lines 3–4 and ¶ 3 lines 1–2), 123 (¶ 2 lines 4–5), 127 (¶ 1 lines 8–10), 146 (page 1 ¶ 2 lines 1–3), 152 (page 1 ¶ 1 lines 11–14; page 2 top & bottom; page 3 ¶ 4 lines 4–7; page 4 ¶¶ 3, 5), 152A, 154 (¶¶ 4–6), 160A, 161 (page 2 lines 14–16; page 11 ¶¶ 1, 2 lines 1–2; page 14 ¶¶ 2–3), 169 (page 1 ¶¶ 5–7; pages 2–3), 185 (page 2 ¶¶ 1, 3–6), 189 (¶¶ 2–4), 207 (page 2 ¶ 5; page 9 ¶ 3 to page 10 top; page 11 ¶ 3 lines 3–6; page 12 ¶ 5 lines 3–4; page 13 lines 10–12, ¶ 2; page 15 ¶ 1 lines 4–6 & ¶ 2 lines 1–3 & ¶ 3 lines 8–10; page

17 ¶ 1 lines 1–4), 208 (page 2 ¶ 2 & ¶ 3 lines 7–8 & ¶ 6 lines 4–6), 217 (lines 10–12), 219A, 222 (page 2 top & ¶ 2 lines 6–9), 223 (page 2 ¶ 2 lines 11–13 & ¶ 5 lines 8–9), 231 (¶ 2), 243 (page 1 ¶¶ 2–4), 244 (¶ 3), 250 (page 1 ¶ 3 lines 3–5; page 2 top), 260 (page 2 ¶ 3 lines 4–7; page 8 ¶ 2; page 9 ¶ 1; page 15 ¶ 2; page 16 ¶¶ 3–5; page 17 ¶ 3; page 18 ¶¶ 1–3), 261 (page 1 ¶¶ 4–6; top page 2), 262A, 271 (page 9 ¶ 2 lines 6–7).

**79.** Attorney General's Memorandum, *supra* note 49, at 522; *see* H.R.Conf.Rep.No.93–1380, 93d Cong., 2d Sess. (1974), *reprinted in* Source Book, *supra* note 22, at 229 (Exemption 7(E) does not include "routine techniques and procedures already well known to the public"); *Malloy v. United States Dep't of Justice,* 457 F.Supp. 543, 545 (D.D.C.1978) (quoting Conference Report); *Ferguson v. Kelley,* 455 F.Supp. 324 (N.D.Ill.1978) (same, denying application of Exemption 7(E) after in camera inspection); *Ott v. Levi,* 419 F.Supp. 750, 752 (E.D.Mo. 1976); *cf. Kanter v. IRS,* 433 F.Supp. 812, 822 (N.D.Ill.1977) (illegal investigatory tactics not protected by Exemption 7(E)).

**80.** Deletions keyed by the Government's index to Exemption 7(E) and cross-referenced to justification 4F that the Court shall examine are found in documents 40, 40A, 44, 67, 91, 179, 219, 296, 309, 326, 332, 374–75, 389, 391, 403, 450.

privacy."[81] The Court will examine the applicability of Exemption 6 to the investigatory documents for which, as already indicated, no clear relation to "law enforcement purposes"[82] has been demonstrated. To grant summary judgment for deletions based on Exemption 6, the Court must find, first, that excised information is contained in "personnel," "medical," or "similar" files and, second, that its disclosure would constitute a "clearly unwarranted invasion of personal privacy."

Because the data are not contained in either personnel or medical files, the first issue is whether the information is contained in "similar" files. The test for that determination was suggested by the Supreme Court in *Department of Air Force v. Rose*,[83] which held that case summaries of cadet disciplinary proceedings fell under the exemption: "the disclosure of these summaries implicates similar privacy values" as would release of personnel files, because " 'identification of disciplined cadets . . . could expose the formerly accused men to lifelong embarrassment, perhaps disgrace, as well as practical disabilities, such as loss of employment or friends.' "[84] The Court relied on a Third Circuit decision[85] which

had argued that the "similar files" language should be interpreted broadly; the "crucial question" was whether disclosure would implicate privacy values. "The common denominator in 'personnel and medical and similar files' is the *personal quality of information in the file.*"[86]

■ Thus, FBI internal security records containing names and identifying information of private citizens and government employees are "similar files" insofar as the disclosure of personal identities would involve privacy interests of the sort Congress intended to protect.[87] As in *Rose*, the release of material might expose innocent persons to embarrassment, particularly as "the excesses of the internal security investigations in the 1950s should be sufficient to signal caution in dealing with unverified derogatory material within the files of an intelligence gathering agency of government."[88] Once it has been determined that the files may be protected by Exemption 6, the inquiry indicated by *Rose* is " 'a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation

**81.** 5 U.S.C. § 552(b)(6).

**82.** There is no inconsistency in determining the applicability of Exemption 6 to documents for which Exemption 7(C) or even 7(D) was claimed by the Government, for the Hart Amendment included 7(C) simply to "make clear that the protections in the sixth exemption for personal privacy also apply to disclosure under the seventh exemption." Source Book, *supra* note 22, at 333. The Court has found no authority to indicate that Exemption 6 should not apply to FBI records technically outside the reach of Exemption 7. *Cf. Irons v. Bell*, 596 F.2d 468 (1st Cir. 1979) (Coffin, C. J.)

**83.** 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

**84.** *Id.* at 376–77, 96 S.Ct. at 1606 (quoting *Rose v. Department of Air Force*, 495 F.2d 261, 267 (2d Cir. 1974)).

**85.** *Wine Hobby USA, Inc. v. United States Internal Revenue Serv.*, 502 F.2d 133 (3d Cir. 1974).

**86.** *Id.* at 135 (emphasis supplied); *accord, Pacific Molasses Co. v. NLRB*, 577 F.2d 1172, 1178–82 (5th Cir. 1978); *Committee on Mason-*

*ic Homes of R. W. Grand Lodge v. NLRB*, 556 F.2d 214 (3d Cir. 1977); *Campbell v. United States Civil Serv. Comm'n*, 539 F.2d 58 (10th Cir. 1976); *Rural Hous. Alliance v. United States Dep't of Agriculture*, 162 U.S.App.D.C. 122, 126, 498 F.2d 73, 77 (1974) ("That exemption was designed to protect individuals from public disclosure of intimate details of their lives, whether the disclosure be of personnel files, medical files or other similar files.").

**87.** *See* cases cited in notes 64–65 *supra.* Exemption 6 has been specifically applied to FBI or CIA files in *Providence Journal Co. v. FBI*, 460 F.Supp. 778 (D.R.I.1978); *Malloy v. United States Dept. of Justice*, 457 F.Supp. 543, 545 (D.D.C.1978); *Ferry v. CIA*, 458 F.Supp. 664 (S.D.N.Y.1978); *St. Louis Post-Dispatch v. FBI*, 447 F.Supp. 31, 38 (D.D.C.1977); *Cerveny v. CIA*, 445 F.Supp. 772 (D.D.C.1978).

**88.** *Cerveny v. CIA*, 445 F.Supp. 772, 776 (D.D.C.1978) (quoted in *Providence Journal Co. v. FBI*, 460 F.Supp. 778, 783 (D.R.I.1978)); *accord, Ferry v. CIA*, 458 F.Supp. 664 (S.D.N.Y. 1978).

of the public's right to governmental information.' " [89]

■ The *Rose* balancing test is similar to that followed by courts applying Exemption 7(C).[90] Thus the Department may withhold the names of third persons and government employees pursuant to Exemption 6 for the same reason it could do so pursuant to Exemption 7(C): the public interest in knowing their precise identities is minimal, while persons involved in or subject to the post-War hunt for alleged Communists have a privacy interest in nondisclosure.[91] Similar considerations apply to the names of informants and interviewees, whose expectations imply an even more weighty privacy interest. Moreover, the public interest would be little served by identifying such persons by name; to the contrary, a public harm might accrue, as "it is doubtful that many would be willing to give information at all if they could not be assured of such privacy." [92]

Accordingly, for the purported "law enforcement" documents in the Lamont file after 1955, the Court grants defendant summary judgment under Exemption 6 for the names of FBI agents and governmental employees,[93] third parties suspected by the FBI or otherwise mentioned in the file,[94] informants, confidential sources, and interviewees,[95] once again to the extent that the size and context of the deletion clearly bear out the claim of exemption. Summary

**89.** *Department of Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976) (quoting S.Rep.No. 813, 89th Cong., 2d Sess. 9 (1966)); *see Wine Hobby USA, Inc. v. United States Internal Revenue Serv.,* 502 F.2d 133, 136 (2d Cir. 1974); *Getman v. NLRB,* 146 U.S.App.D.C. 209, 213, 450 F.2d 670, 674 (1971).

**90.** *Nix v. United States,* 572 F.2d 998, 1001–02 (4th Cir. 1978); *Luzaich v. United States,* 435 F.Supp. 31, 36 (D.Minn.1977). The Court is aware, however, that the burden upon the Government is higher in proving "clearly unwarranted invasion" of privacy in Exemption 6 cases than the "unwarranted invasion" of privacy of Exemption 7(C). *Department of Air Force v. Rose,* 425 U.S. 352, 378–79 n. 16, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

**91.** *See Cerveny v. CIA,* 445 F.Supp. 772 (D.D.C. 1978); *see Malloy v. United States Dep't of Justice,* 457 F.Supp. 543, 545 (D.D.C.1978); *Metropolitan Life Ins. Co. v. Usery,* 426 F.Supp. 150, 168–69 (D.D.C.1976); *National Prison Project of ACLU v. Sigler,* 390 F.Supp. 789, 794 (D.D.C.1975); cases cited in notes 67–69 *supra.* But see *Fonda v. CIA,* 434 F.Supp. 498, 506 (D.D.C.1977). The Court does not hold that "public figures" or governmental wrongdoers are so protected, *cf. Providence Journal Co. v. FBI,* 460 F.Supp. 778, 787–89 (D.R.I.1978) (citing cases), for the context of the deleted names in the Lamont file indicates that the names of only lower-level government employees are excised in this case.

**92.** *Flower v. FBI,* 448 F.Supp. 567, 571–72 (W.D.Tex.1978); *see Evans v. Department of Transp.,* 446 F.2d 821, 823 (5th Cir. 1971); *American Federation of Government Employees v. Department of Army,* 441 F.Supp. 1308, 1314 (D.D.C.1977); cases cited in note 76 *supra.*

**93.** Thus names of FBI agents and other governmental employees keyed by the index to Exemption 7(C) and cross-referenced to justifications 4D(4) & (5) have been properly excised from documents 273, 275, 277, 279–80, 283, 286–89, 292–93, 295–97, 299, 301–03, 308, 309, 312, 314, 317–18, 321–22, 324, 326, 327A, 330, 332, 335, 341, 343A, 347, 353, 360, 362–63, 365, 369, 373–75, 376A, 378, 380–84, 386, 387–89, 391–92, 397–97A, 399, 401, 404, 407–10, 416, 420, 422, 424A, 425–26, 429–29A, 432, 436–37, 441, 444, 447, 449, 454.

**94.** Except as indicated in notes 96 & 97 *infra,* deletions keyed by the Government's index to Exemption 7(C) and cross-referenced to justification 4D(1)–(3) (or simply to 4D) are properly exempt from disclosure. Such deletions may be found in documents 273, 284–85, 287*, 288*–89, 293, 296, 310*, 312, 314, 326*–27A*, 341, 369, 371–71A*, 372, 379*, 384*, 391*, 397, 404*, 406*, 408*, 409*, 416, 417A–B, 422*, 425*–26, 428, 429*, 432*, 436*, 442, 451. Documents that are starred (*) contain certain portions, specified at note 96 *infra,* that the Court will inspect in camera.

**95.** Except as indicated in note 96 *infra,* deletions keyed by the Government's index to Exemption 7(D) (or to both 7(D) and 7(C)) and cross-referenced to justification 4E and 4E(2) are properly exempt from disclosure. Such deletions may be found in documents 273*, 275*, 277, 279–80, 287*, 293, 295*–96, 308*–09, 312, 314*, 326*, 332*, 347*, 355, 363, 369, 373*, 388, 389, 391*, 397, 399*, 401, 403, 404*, 408*–09*, 416*, 421–22*, 423, 425, 426*, 429*, 431–32*, 437*, 441*, 447*, 448*, 452–53. Documents that are starred (*) contain certain portions, specified at note 96 *infra,* that the Court will inspect in camera.

judgment is denied to defendant for other deletions covering more than the name and position of third parties or confidential sources, which materials shall be submitted to the Court.[96] Finally, the Court grants summary judgment to plaintiff for names of his associates where they are mentioned in a nonderogatory or public context.[97]

In sum the Court sustains on the present record the Department's withholdings described in footnotes 36, 47, 70, 77, 93, 94, and 95 above; material referred to in footnotes 73 and 97 shall be turned over to Lamont.[98] As to the remainder, set forth in footnotes 44, 45, 46, 72, 78, 80, and 96, the Department is directed to submit unexpurgated versions to the Court for its private inspection within thirty days of this disposition;[99] plaintiff shall submit to the Court copies of the materials described on page 46 of its Memorandum objecting to the Magistrate's Report.

So ordered.

---

**96.** Deletions keyed by the Government's index to Exemption 7(C) and cross-referenced to justifications 4D(1)–(3) (or simply to 4D) that the Court shall examine in camera are found in documents 308 (pp. 13ff [never tendered to Court]), 326A, 327A (except pages 1–2), 336B, 360, 371A (page 2 ¶ 1), 375, 379 (page 2), 381, 384 (page 2 ¶ 3), 391 (page 11 ¶ 2), 404 (page 9 ¶ 5), 406 (page 2 ¶ 3), 408 (page 11 ¶ 4), 409 (page 14 ¶ 6), 422 (page 6 ¶ 7 to page 7 ¶ 1; page 8 ¶ 3), 424–24D, 425 (páge 5 ¶ 3), 429 (page 72 ¶ ¶ 6, 8; page 8 ¶ 2), 432 (page 10 ¶ 1 subpara.), 436 (¶ ¶ 3–6), 441, 443–46.

Deletions keyed by the Government's index to Exemption 7(D) & 7(C) (or just to 7(D)) and cross-referenced to justification 4E (and its subsections) that the Court shall examine in camera are found in documents 273 (page 1 ¶ 5 lines 1–3; top page 6 lines 1–2; page 6 ¶ 1 lines 7–11; top page 7; page 8 ¶ 4 to page 10 ¶ 1), 275 (¶ 2), 287 (page 14 ¶ 2 lines 1–2), 295 (page 4 ¶ 2; page 9 ¶ ¶ 1, 3; page 11 ¶ 2), 308 (page 1 synopsis; page 6 ¶ 4 to page 7 ¶ 2), 310, 312A, 314 (index pages i, ii; page 5 ¶ 1; page 11 ¶ 5; page 17 ¶ 3), 326 (page 9 ¶ 3 lines 4–6; bottom page 10 to top page 11; page 24 ¶ 2 lines 1–2; page 26 ¶ 3; page 27 to top page 28; page 29 ¶ ¶ 3–6; page 30 ¶ ¶ 1–3, 5; page 31 to top page 33), 326A, 327–27A, 330, 332 (page 1 ¶ ¶ 5–6), 335, 336A, 336E, 341–42, 343A, 344, 345B, 347 (pages B to D; page 3 ¶ 4; page 4 bottom to top page 5), 348, 351, 354, 358A, 360, 365, 373 (page 1 ¶ 2; page 1 of memo ¶ 1 lines 1–4 & ¶ 2 lines 1–2), 375, 377–78, 380–81, 391 (pages A to D; page 4 ¶ 5 to page 6), 392, 393B, 394, 397 (page 5 ¶ ¶ 1–2; page 6 ¶ ¶ 1–2; page 7 ¶ 3;

page 8 ¶ ¶ 2–3), 399 (page 1 of enclosure ¶ 1 lines 4–7), 404 (page B, T–8 name of agency; pages 4–6; page 9 ¶ 4), 406 (page 1 airtel ¶ 2 sources 2–5), 408 (page 2 ¶ 3 to page 4 ¶ 2; page 5 ¶ 4), 409 (page 2 ¶ 4 to page 5 ¶ 2; page 14 ¶ 5), 416 (page 2 ¶ 3 to page 3 ¶ 2), 422 (bottom page 3 to page 6 ¶ 6), 424, 425 (page 2 ¶ 5 to page 3 ¶ 3; pages 6 to 7), 426 (page 2 ¶ 5 to page 7 ¶ 3), 429 (page 2 ¶ 5 to page 6 top), 432 (pages A to C; page 2 to page 8 ¶ 4), 435, 437 (pages A to C; page 2 ¶ 3 to top page 6); 438–40, 441 (pages A to C; bottom page 2 to page 7 ¶ 1), 447 (pages A to C; pages 2 to 7), 448 (airtel page 1 ¶ ¶ 3–4; page 1 memo), 449 [unpaginated, many pages not tendered to Court].

**97.** Deletions keyed by the index to Exemption 7(C) and cross-referenced to justification 4D or 4D(1) shall be released to plaintiff with respect to documents 287 (page 1 ¶ 1), 288 (page 1 ¶ 3), 295 (page 6 ¶ 5), 310 (page 1 ¶ 1 lines 3, 5), 314 (page 14 ¶ 3 lines 3, 6), 321 (page 3), 326 (page 4 line 3), 422 (page B opposite T–8; page 8 ¶ ¶ 1, 3), 425 (page 5 ¶ ¶ 1, 8 line 3; page B opposite T–4; page C opposite T–17, T–19).

**98.** Summary judgment is also entered for defendant for matters withheld pursuant to Exemption 3, 5 U.S.C. § 552(b)(3).

**99.** The Department is also directed to reprocess Lamont's file to reflect its new rules for Exemption 2 withholdings, *see* Note 17 *supra.*